```
1  MARK S. ADAMS, SBN 68300
   California Receivership Group
2  3435 Ocean Park Blvd., Suite 107
   Santa Monica, CA 90405
3  Tel. (310) 471-8181
   Fax (310) 471-8180
4  madams@calreceivers.com

5  Attorney for Defendants MARK ADAMS in his capacity as Receiver; CALIFORNIA
   RECEIVERSHIP GROUP INC, a California Corporation; and RECEIVERSHIP FINANCING,
6  LLC, a California limited liability company
```

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA -- SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL CASTAGNOLA; MICHAEL CASTAGNOLA AS TRUSTEE OF THE MICHAEL L. CASTAGNOLA REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 15, 2016; CARLY CASTAGNOLA;<br><br>Plaintiffs,<br>v.<br><br>MARK ADAMS in his capacity as Receiver; ROBERT PITTMAN in his capacity as Sonoma County Counsel; DIANA GOMEZ, in her capacity as Sonoma Deputy County Counsel; MICHAEL KING, in his capacity as Sonoma Deputy County Counsel; COUNTY OF SONOMA; TYRA HARRINGTON in her capacity as Manager of Code Enforcement Permit Sonoma; SUSAN GORIN in her capacity as Supervisor; DAVID RABBITT in his capacity as Supervisor; CHRIS COURSEY in his capacity as Supervisor; JAMES GORE in his capacity as Supervisor; LYNDA HOPKINS in her capacity as Supervisor; JESSIE CABLK in his capacity as employee of Permit Sonoma; CALIFORNIA RECEIVERSHIP GROUP INC. a California Corporation; RECEIVERSHIP FINANCING, LLC, a California limited liability company; and DOES 1-10;<br><br>Defendants. | Case No. 3:25-cv-03624-JD<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS' CALIFORNIA RECEIVERSHIP GROUP, INC., RECEIVERSHIP FINANCING, LLC, AND MARK ADAMS, A RECEIVER TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(1) and 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. James Donato<br><br><u>Hearing</u><br>Date: February 12, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 11, 19th Floor |

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 12, 2026 at 10:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 11 on the 19th Floor of the United States Courthouse for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, California, 94102 Defendants MARK ADAMS in his capacity as Receiver ("Adams"); CALIFORNIA RECEIVERSHIP GROUP INC, a California Corporation ("CRG"); and RECEIVERSHIP FINANCING, LLC, a California limited liability company ("RF") (collectively "Receiver Defendants"), by and through their counsel, will and hereby do move to dismiss the First Amended Complaint of Plaintiffs MICHAEL CASTAGNOLA ("Castagnola"); MICHAEL CASTAGNOLA AS TRUSTEE OF THE MICHAEL L. CASTAGNOLA REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 15, 2016 ("Trust"); and CARLY CASTAGNOLA ("Carly") (collectively, "Plaintiffs").

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Court lacks subject-matter jurisdiction over this action because Plaintiffs have not obtained permission to sue from the Court that appointed Adams and CRG as receiver and their creditor, RF, who is the functional equivalent of a court-appointed officer ("Appointing Court") prior to filing this lawsuit. Additionally, Plaintiffs cannot state a claim for relief against Receiver Defendants absent obtaining such requisite permission from the Appointing Court. Specifically, Plaintiffs' First Amended Complaint ("FAC") is brought in violation of the <u>Barton</u> doctrine, as Plaintiffs have failed to obtain leave from the Appointing Court to sue Receiver Defendants. Thus, the FAC should be dismissed pursuant to Rule 12(b)(6). The Complaint is further fatally defective because Plaintiffs cannot state a claim against Adams and CRG because they are protected from suit by absolute derivative judicial immunity by virtue of his appointment as a receiver by the Superior Court of the State of California.

//
//
//

1    This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the concurrently-filed Declaration of Mark Adams, the Request for Judicial Notice and exhibits therein, the First Amended Complaint filed, all pleadings and papers on file in this action and any oral or documentary evidence as may be presented during or before the time of hearing on this Motion, and any other evidence or argument as the Court may deem appropriate.

Dated: December 1, 2025            Respectfully submitted,

*/s/ Mark Adams*

Mark Adams, Attorney for Defendants MARK ADAMS in his capacity as Receiver; CALIFORNIA RECEIVERSHIP GROUP INC, a California Corporation; and RECEIVERSHIP FINANCING, LLC, a California limited liability company

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

After repeatedly filing frivolous and duplicative motions, cases, fraudulent arbitrations, and appeals, and with the Superior Court having gone so far as to declare Plaintiff MICHAEL CASTAGNOLA ("Castagnola") a 'vexatious litigant' who can no longer file new litigation in propria persona in the California state court system without advance approval of the presiding judge now, Plaintiffs Castagnola; MICHAEL CASTAGNOLA AS TRUSTEE OF THE MICHAEL L. CASTAGNOLA REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 15, 2016 ("Trust"); CARLY CASTAGNOLA ("Carly") (collectively, "Plaintiffs") file the First Amended Complaint ("FAC") as yet another improper attempt to challenge the receivership. The FAC should be dismissed under Fed. Rules Civ. Proc., rule 12(b)(1) on the grounds that there is no subject matter jurisdiction. It should also be dismissed under Fed. Rules Civ. Proc., rule 12(b)(6) on the grounds that Plaintiffs have not, and cannot, state a claim for relief against Defendants MARK ADAMS in his capacity as Receiver ("Adams"); CALIFORNIA RECEIVERSHIP GROUP INC, a California Corporation ("CRG"); and RECEIVERSHIP FINANCING, LLC, a California limited liability company ("RF") (collectively "Receiver Defendants"). Carly previously asked for leave to file a complaint against CRG and Mark Adams (collectively "Receiver"), and the Superior Court denied her request. Castagnola and Trust never asked for leave to sue any of the Receiver Defendants.

Moreover, Receiver Defendants' commencement of receivership activities as alleged by Plaintiffs are protected by absolute derivative judicial immunity by virtue of Receiver Defendants acting as a court-appointed receiver. Therefore, Plaintiffs cannot state a claim against Receiver Defendants and the FAC must be dismissed pursuant to Rule 12(b)(6). Based on the foregoing, the FAC should be dismissed without leave to amend.

**II.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY[1]**

On December 17, 2019, the County of Sonoma initiated an enforcement action in County

---

[1] Receiver Defendants do not concede as true any of Plaintiffs' allegations in their FAC. Factual recitation herein is only for the purpose of this Motion as the Court is required to decide whether the facts alleged, if true, would entitle Plaintiffs to some form of legal remedy. SEC v. Cross Fin. Servs., 908 F. Supp. 718, 726-727 (C.D. Cal. 1995).

of Sonoma v. Castagnola, Sonoma County Superior Court Case No. SCV-265714, concerning code-enforcement violations on the property located at 12778 Dupont Road in Sebastopol, CA ("Receivership Property"). (Plaintiff's First Amended Complaint ("FAC"), ¶¶ 5, 93, 134.) After Castagnola was found to be in contempt of a Stipulated Judgment entered on July 24, 2020, for failure to fulfill any of the obligations outlined in the Stipulated Judgment, the Superior Court appointed Adams, through CRG, as receiver (collectively the "Receiver") on May 25, 2022, pursuant to the County's petition. (FAC ¶¶ 23, 98, Exhibit H.) The order authorized the Receiver to take possession of the property, abate code violations, and, if necessary, borrow funds secured by super-priority liens to carry out court-ordered remediation. (FAC, Exhibit H ¶ C.)

The receivership proceedings were marked by extensive litigation activity by Castagnola. He filed repeated challenges, objections, and motions, including status conference statements and affidavits contesting the Receiver Defendants' authority and work. (FAC ¶¶ 138–140, Exhibit E) (status conference statement incorporating press articles and allegations against the Receiver). Plaintiffs further concede that the County and Receiver had to file multiple reports and court documents responding to Castagnola's constant filings, including reports detailing delays caused by "litigation tactics employed by Defendant [Castagnola]." (FAC ¶ 134.) On June 13, 2022, Castagnola went so far as to appeal the Appointment Order which was denied. (Exhibit 1 to concurrently filed Request for Judicial Notice ("RJN").) And when that attempt failed, Castagnola filed a frivolous Restraining Order claiming Elder Abuse against Adams (amongst others) that was ultimately dismissed with prejudice. (RJN Exhibit 2.)

On July 24, 2023, Castagnola was declared a vexatious litigant because the Superior Court found that he had filed at least seven unsuccessful lawsuits, repeatedly attempted to relitigate issues already decided—including the Stipulated Judgment he signed—and continually burdened the court with frivolous, confusing, and harassing filings. (RJN Exhibit 3.)

Now, as another attempt, Plaintiffs' FAC spans 230 pages and asserts eighteen claims—including constitutional claims, RICO claims, fraud-based claims, reformation of deed, quiet title, and wrongful foreclosure. (FAC ¶ 2.) Plaintiffs rely heavily on their own status conference filings and affidavits submitted in the state receivership proceedings, incorporating these documents

-2-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1  wholesale as purported evidence of wrongdoing. (FAC ¶¶ 138–140; Exhibits E, and F.) At the
2  core of their allegations is Plaintiffs' frustration with Receiver Defendants' lawful acts pursuant to
3  the orders of the Appointing Court. (FAC ¶¶ 607-611; 131-137) In this manner, the FAC confirms
4  that at all times Receiver Defendants have acted in conformance with orders issued by the
5  Appointing Court.
6      The key judicially noticeable event—and the one Plaintiffs now mischaracterize—is the
7  March 12, 2025 Superior Court order (FAC Exhibit B). That order unambiguously states:
8      a. [Carly Castagnola's] motion to file a separate action against the receiver is DENIED.
9      b. [Carly Castagnola's] request to bring her claims as a claim in intervention against
10         Receiver in this action is GRANTED.
11      c. Receiver's counsel shall submit a written order to the Court consistent with this tentative
12         ruling and in compliance with Rule of Court 3.1312(A) and (b).
13      d. The court VACATED her previously filed "Verified Complaint" from January 3, 2025.
14  (Declaration of Mark Adams, ¶¶ 3.)
15      Thus, the ruling expressly prohibits exactly what Plaintiffs have done here: initiating a
16  separate federal lawsuit against the Receiver without first obtaining leave of the supervising
17  Appointing State Court.
18      Despite attaching the order word-for-word to their FAC, Plaintiffs allege—incorrectly—
19  that Exhibit B "approv[es] Carly Castagnola's request to proceed with a lawsuit against Mark
20  Adams," even though the plain language of the order says nothing of the sort. (FAC Exhibit List,
21  Exhibit B description; Declaration of Mark Adams, ¶¶ 3-6; RJN Exhibit 5.)
22      Plaintiffs admit that Mr. Adams was acting under a court appointment in the state
23  receivership action. (FAC ¶¶ 102–104, 132–134.) They further attach multiple receiver reports,
24  court orders, and title documents—all arising from the exclusive jurisdiction of the Sonoma
25  County Superior Court over the receivership estate.
26      Nevertheless, Plaintiffs brought this federal lawsuit in April 2025 (later amended
27  September 22, 2025) without seeking leave of the receivership court, obtaining permission to sue
28  the Receiver, or complying with the instructions in the March 24, 2025 intervention order.

(Declaration of Mark Adams, ¶¶ 3-6.)

By Plaintiffs' own documents, the Receiver Defendants continue to act under the authority of the Appointing State Court, and the Receivership Property remains part of the receivership estate. (FAC ¶ 134.)

### III. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), PLAINTIFFS FAC MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Rule 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction. The party asserting federal subject matter jurisdiction bears the burden of proving its existence. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Motions to dismiss based on the Barton doctrine are all properly analyzed under Rule 12(b)(1). Beck v. Fort James Corp. (In re Crown Vantage), 421 F.3d 963, 971 n.5 (9th Cir. 2005) (recognizing that "Barton implicates the subject matter jurisdiction of the court"). Under the Barton doctrine, "when a plaintiff sues a receiver outside of and without the permission of the appointing court, the non-appointing court is without jurisdiction to entertain the suit." Med. Dev. Int'l v. California Dep't of Corr. & Rehab., 585 F.3d 1211, 1216-17 (9th Cir. 2009) (citing Barton v. Barbour, 104 U.S. 126, 131 (1881)).[2] Moreover, obtaining leave is not a mere formality. The Barton doctrine ensures that the appointing court retains exclusive authority to fashion remedies and arose precisely because litigants repeatedly sought a second chance by pursuing collateral federal review of adverse state-court rulings. Its purpose is to bar attempts to circumvent the original court's authority.

When resolving a facial Rule 12(b)(1) challenge, as is the case here, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. In so doing, the court may rely on undisputed facts or those judicially noticeable as matters of public record. See Hyatt v. Yee, 871 F.3d 1067, 1071, n.15 (9th Cir. 2017)

A motion to dismiss pursuant to Rule 12(b)(1) should be granted where "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Waterhouse

---

[2] The Barton doctrine is jurisdictional, and is therefore decided under Rule 12(b)(1). See Ryan v. Ruby, No. 11-CV-2090-IEG BGS, 2012 WL 523930, *1 n.1 (S.D. Cal. Feb. 15, 2012).

v. U.S., 2007 WL 2418620 *2 (E.D. Cal. Aug. 24, 2007). Because federal courts are courts of limited jurisdiction, a lack of jurisdiction is presumed, and the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. Curtis v. Treasury Dept., 2007 WL 460646, *1 (N.D. Cal. Feb. 7, 2007) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) ("It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction")); see also Valdez v. U.S., 837 F. Supp. 1065, 1067 (E.D. Cal. 1993) ("The Plaintiff always bears the burden of establishing subject matter jurisdiction. In effect the court presumes lack of jurisdiction until the plaintiff proves otherwise.")

### i. This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' FAC Because It Was Filed Without Permission from the Receivership Court in Violation of the Barton Doctrine.

It is a long-standing rule that a party must obtain leave from the appointing court to sue a receiver or take any action against property of a receivership estate. See Curry v. Castillo (In re Castillo), 297 F.3d 940, 945 (9th Cir.2002). This rule, commonly known as the "Barton doctrine" was first expressed by the U.S. Supreme Court in Barton v. Barbour 104 U.S. 126 (1881). The Supreme Court held "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." Id. at 128. Under the Barton doctrine, the court presiding over a later-filed and unapproved action lacks subject-matter jurisdiction over the case. See In re Crown Vantage, 421 F.3d at 971 (explaining when the Barton doctrine is violated, the only appropriate remedy is to order the cessation of the improper action because if leave of court was not obtained, then the other forum lacked subject-matter jurisdiction over the suit) (citing Barton, 104 U.S. at 127).

For the Barton doctrine to apply, the plaintiff must have (1) attempted to initiate, without the initial court's permission, an action in another forum; (2) against a receiver, trustee, or other officer appointed by the court; and (3) "for acts done in the officer's official capacity." Blixseth v. Brown, 470 B.R. 562, 566 (D. Mont. 2012) (citing In re Crown Vantage, 421 F.3d at 970); see also Harris v. Wittman (In re Harris), 590 F.3d 730, 742 (9th Cir. 2009) ("[A]bsent leave of the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

appointing court, the Barton doctrine denies subject matter jurisdiction to all forums except the appointing court.").

Plaintiffs' FAC blatantly flouts the Barton doctrine: they filed in Federal Court (another forum) without and directly against the Appointing State Court's explicit denial of permission.

Second, Adams, through CRG (collectively, "Receiver"), was acting squarely within his official capacity as the court-appointed receiver of the Receivership Property. Critically, the Barton doctrine extends not only to the receiver himself but also to entities and individuals who function as the receiver's equivalents in carrying out court-approved duties. Here, the Receiver's lender, RF, falls squarely within that category. As the creditor that financed the Receiver's certificates, RF effectively acted as a court-sanctioned facilitator of the receivership. Courts have recognized that creditors providing court-approved financing to officers of the court may enjoy Barton protection. For example, in Lawrence v. Goldberg, 573 F.3d 1265, 1270 (11th Cir. 2009), the Eleventh Circuit affirmed dismissal under the Barton doctrine of a debtor's suit against creditors who had provided the chapter 7 trustee with court-approved financing to recover estate property. The court held that by funding the trustee's asset-recovery efforts, these creditors functioned as the "functional equivalent" of court-appointed officers and thus were entitled to Barton protection. Similarly, in Blixseth v. Brown, 470 B.R. 562 (D. Mont. 2012), the district court extended Barton protection to the chairperson of an official committee of unsecured creditors because he acted as the functional equivalent of a court-approved officer.

Third, Plaintiffs' claims are directed precisely at the Receiver Defendants for alleged actions taken in their capacity as receiver and in the course of performing their court-ordered duties to abate the Receivership Property. This was not in excess of their authority. Thus, as Plaintiffs acknowledge, the damages they suffered as the purported result of the Receiver Defendants' conduct occurred solely as a result of the receivership proceedings and the court-approved abatement work. These matters are central to the resolution of this dispute.

Accordingly, the Complaint must be dismissed pursuant to Rule 12(b)(1). Barton, 104 U.S. at 131; In re Crown Vantage, Inc., 421 F.3d at 971; Van Horn 2009 WL 211365.

//

-6-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

### IV. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), PLAINTIFFS' FAC MUST BE DISMISSED

Rule 12(b)(6) authorizes dismissal for failure to state a claim "based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks omitted). To survive a Rule 12(b)(6) motion, a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). Claims must be "plausible," meaning supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court may consider documents or materials subject to judicial notice and those incorporated into the complaint by reference. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

#### i. Plaintiffs' FAC Must Be Dismissed for Failure to Allege That They Obtained Permission from The Appointing Court to File This Action.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of Plaintiff's allegations. The Court must decide whether the facts alleged, if true, would entitle Plaintiff to some form of legal remedy. SEC v. Cross Fin. Servs., 908 F. Supp. 718, 726-727 (C.D. Cal. 1995)

As discussed above, permission from the appointing Court is a prerequisite to a party's ability to sue the Receiver in any jurisdiction. Barton, 104 U.S. at 131; In re Crown Vantage, Inc., 421 F.3d at 971. Plaintiffs' Complaint wrongfully alleges that Plaintiff obtained permission from the Appointing State Court to file this action against Receiver Defendants. This allegation is false because they never obtained the requisite permission, and in fact, were denied permission. (FAC

-7-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Exhibit List, Exhibit B description; Declaration of Mark Adams, ¶¶ 3-6.) In the absence of these allegations, Plaintiffs have failed to allege facts sufficient to state a claim against Receiver Defendants. Thus, the Complaint should be dismissed in its entirety as to Receiver Defendants pursuant to Rule 12(b)(6).

In addition, until and unless Plaintiff obtains the permission from the Appointing Court, any attempt(s) to further amend the complaint as against Receiver Defendants would be futile. Therefore, the Complaint should be dismissed as to Receiver Defendants without leave to amend until Plaintiff has obtained said permission from the Appointing Court. Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004).

### ii. Plaintiffs' FAC Must Be Dismissed for Failure to Allege Facts Sufficient to Overcome the Receiver's Absolute Derivative Judicial Immunity.

A receiver is an officer of the Court appointed to take possession of and protect assets for the appointing court under that court's control and supervision. Crites Inc. v Prudential Ins. Co. of America, 322 U.S. 408, 410, (1944); Security Pacific Nat'l. Bank v. Geernaert, 199 Cal.App. 3d 1425, 1431-32 (1988). The doctrine of judicial immunity affords officials of the judiciary the same immunity as judges. Smallwood v United States, 358 F.Supp. 398, 404 (E.D. Mo 1973), aff'd. 486 F.2d 1407 (8th Cir. 1973). A receiver is such an official. Id. Because the Complaint names "Adams, in his capacity as Receiver" and all of the acts complained of were taken by Adams, CRG, or RF as receiver or agent of the Receiver pursuant to the Appointing Court's orders, or were the acts of the Court itself (granting writs, approving rehabilitation plans, (See FAC ¶¶ 102, 114.), Receiver Defendants cannot be sued for the acts complained of.

Courts have consistently held receivers are immune from suit based on their acts as receiver. A court appointed receiver is a quasi-judicial officer with the protection of immunity. "Officers of the court . . . such as receivers. . .who act in obedience with the lawful mandate of the court or obedience to lawful process of any sort, are protected or privileged in respects to acts done under such lawful authority . . . A receiver obeying the orders of the court is not a guarantor of the correctness of the court's ruling" 2 Clark on Receivers § 388 (3rd Ed. 1959) Bradford Audio Corp. v Pious, 392 F.2d 67, 73 (2nd Cir. 1968).

-8-
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

> "A receiver who faithfully carries out the order of his appointing judge must share that judge's absolute immunity. To deny this immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court. (Citations omitted). It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives the order while punishing the receiver who obeys it, a fear of bringing litigation down on the receiver might color a court's judgment in some cases; and if the court ignores the danger of harassing suits, tensions between the receiver and the judge seem inevitable."

Kermit Construction Corporation v Banco Credito Y Ahorro Point Ponceno, 547 F.2d 1, 3 (5th Cir. 1976).

The Ninth Circuit has adopted this position. In New Alaska Development Corp. v Guetschow, 869 F.2d 1298, 1303 (9th Cir. 1989) the Court stated:

> "While our cases have not directly addressed the immunity due a receiver appointed by a state court to manage the business assets of a marital estate during a dissolution proceeding, their rationale teaches that absolute derivative judicial immunity is appropriate. Moreover, cases from other circuits have held uniformly that state court appointed receivers are entitled to absolute immunity. They start with the premise that 'receivers are court officials that share the immunity awarded to judges.' Absent broad immunity, receivers would be a 'lightening rod for harassing litigation aimed at judicial orders." [Citations omitted]

See also, Davis v Bayless, 70 F.3d 367, 373 (5th Cir. 1995) ["Court appointed receivers act as arms of the court and are entitled to share the appointed judge's absolute judicial immunity provided the challenged actions are taken in good faith and within the scope of the authority granted to the receiver."] The Perry Center Inc. v Heitkamp, et al., 1998 N.D. 78 (1998) ["The derivative judicial immunity afforded a receiver applies to both federal and state law claims."].

The Ninth Circuit went on to hold in New Alaska Development that if a party sues a receiver, it <u>must</u> allege the absence of judicial immunity or plaintiff's complaint must be dismissed. "To limit the harassment of receivers 'as quickly as possible', a plaintiff is required to allege the absence of judicial immunity. [citation omitted] Failure to allege 'that the judge's ultimate actions were not judicial or beyond the scope of the court's jurisdiction' requires dismissal." New Alaska Development, 869 F.2d at 1303.

The FAC fails to allege that the appointing order or any other order issued by the Appointing State Court "were not judicial" or were "beyond the scope of the court's jurisdiction". To the contrary, the Appointing State Court, having taken control of the Receivership Property

referred to in the FAC reveals that the Appointing State Court has exclusive jurisdiction over the receivership and more specifically, the Receivership Property to the exclusion of any other Court. To wit: Plaintiffs admit that Mr. Adams was acting under a court appointment in the state receivership action. (FAC ¶¶ 102–104, 132–134.) The FAC further attaches multiple receiver reports, court orders, and title documents—all arising from the exclusive jurisdiction of the Sonoma County Superior Court over the receivership estate. (FAC ¶¶ 138–140; Exhibits. E, F.) Accordingly, Receiver Defendants have derived absolute judicial immunity which bars Plaintiffs' FAC against them. Therefore, and pursuant to the Ninth Circuit in <u>New Alaska Development</u>, Plaintiffs' FAC "requires dismissal." for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## V. CONCLUSION

Plaintiffs' claims, all of which arise from the circumstances leading up to and surrounding the actions taken during the receivership or the Receivership property, cannot be maintained in any non-appointing court forum, including the present one, without the permission of the Appointing State Court. Plaintiffs tried but failed to obtain the requisite permission, depriving this Court of subject matter jurisdiction. Moreover, the dismissal should be without leave to amend because until Plaintiffs obtains permission from the Appointing Court, they cannot proceed against Receiver Defendants as this Court is deprived of jurisdiction.  For the aforementioned reasons, Receiver Defendants respectfully request this Court grant this motion and dismiss them from this action without leave to amend.

Dated:  December 1, 2025                    Respectfully submitted,

_____
Mark Adams, Attorney for Defendants MARK ADAMS in his capacity as Receiver; CALIFORNIA RECEIVERSHIP GROUP INC, a California Corporation; and RECEIVERSHIP FINANCING, LLC, a California limited liability company