1  MARK S. ADAMS, SBN 68300
   California Receivership Group
2  3435 Ocean Park Blvd., Suite 107
   Santa Monica, CA 90405
3  Tel. (310) 471-8181
   Fax (310) 471-8180
4  madams@calreceivers.com
   Attorney for Defendants MARK ADAMS in his capacity as Receiver; CALIFORNIA
5  RECEIVERSHIP GROUP INC, a California Corporation; and RECEIVERSHIP FINANCING,
   LLC, a California limited liability company

6

7                      UNITED STATES DISTRICT COURT

8          NORTHERN DISTRICT OF CALIFORNIA -- SAN FRANCISCO DIVISION

9

10 | MICHAEL CASTAGNOLA; MICHAEL          | Case No. 3:25-cv-03624-JD
   | CASTAGNOLA AS TRUSTEE OF THE         |
11 | MICHAEL L. CASTAGNOLA REVOCABLE      | **REPLY BY DEFENDANTS**
   | TRUST AGREEMENT DATED SEPTEMBER      | **CALIFORNIA RECEIVERSHIP**
12 | 15, 2016; CARLY CASTAGNOLA;          | **GROUP, INC., RECEIVERSHIP**
   |                                      | **FINANCING, LLC, AND MARK**
13 |            Plaintiffs,               | **ADAMS, A RECEIVER TO**
   |       v.                             | **PLAINTIFFS' OPPOSITION TO**
14 |                                      | **THEIR MOTION TO DISMISS**
   | MARK ADAMS in his capacity as Receiver; | **PURSUANT TO FED. R. CIV. PROC.**
15 | ROBERT PITTMAN in his capacity as Sonoma | **12(b)(1) and 12(b)(6)**
   | County Counsel;                      |
16 | DIANA GOMEZ, in her capacity as Sonoma | Judge: Hon. James Donato
   | Deputy County Counsel;               |
17 | MICHAEL KING, in his capacity as Sonoma | Hearing
   | Deputy County Counsel;               | Date: February 12, 2026
18 | COUNTY OF SONOMA;                    | Time: 11:00 a.m.
   | TYRA HARRINGTON in her capacity as   | Location: Courtroom 11, 19th Floor
19 | Manager of Code Enforcement Permit Sonoma; |
   | SUSAN GORIN in her capacity as Supervisor; |
20 | DAVID RABBITT in his capacity as     |
   | Supervisor;                          |
21 | CHRIS COURSEY in his capacity as     |
   | Supervisor;                          |
22 | JAMES GORE in his capacity as Supervisor; |
   | LYNDA HOPKINS in her capacity as     |
23 | Supervisor;                          |
   | JESSIE CABLK in his capacity as employee of |
24 | Permit Sonoma;                       |
   | CALIFORNIA RECEIVERSHIP GROUP INC.   |
25 | a California Corporation;            |
   | RECEIVERSHIP FINANCING, LLC, a       |
26 | California limited liability company; |
   | and DOES 1-10;                       |
27 |                                      |
   |            Defendants.               |
28

I.    **INTRODUCTION**

Plaintiffs MICHAEL CASTAGNOLA ("Castagnola"); MICHAEL CASTAGNOLA AS TRUSTEE OF THE MICHAEL L. CASTAGNOLA REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 15, 2016 ("Trust"); and CARLY CASTAGNOLA ("Carly") (collectively, "Plaintiffs") opposition confirms that this action is barred at the threshold. The Barton doctrine squarely applies, and Plaintiffs concede they did not obtain leave to sue Defendants MARK ADAMS in his capacity as Receiver ("Adams"); CALIFORNIA RECEIVERSHIP GROUP INC, a California Corporation ("CRG"); and RECEIVERSHIP FINANCING, LLC, a California limited liability company ("RF") (collectively "Receiver Defendants") in this action. Their effort to invoke a narrow ultra vires exception fails because, as conceded in their opposition, every challenged act of the Receiver Defendants was undertaken pursuant to and under the supervision of the Sonoma County Superior Court. Plaintiffs likewise cannot ignore the state-court order authorizing Carly Castagnola to intervene in the state-court receivership action to pursue claims in that forum, and instead pursuing a federal lawsuit brought by multiple plaintiffs and entities.

Plaintiffs' after-the-fact attempt to seek retroactive permission (which Plaintiffs attempted to file only after Defendants moved to dismiss, and which was returned as unfiled on the state-court docket) underscores the jurisdictional defect rather than cures it. Federal jurisdiction cannot be created retroactively. And even if it could, the Receiver Defendants are independently shielded by quasi-judicial immunity for actions taken in compliance with court orders. Because Plaintiffs' claims amount to an impermissible collateral attack on a state-court receivership, the First Amended Complaint ("FAC") should be dismissed in its entirety without leave to amend.

II.    **LEGAL ANALYSIS**

A.    **The Ultra Vires Exception to the Barton Doctrine Does Not Apply**

Plaintiffs attempt to evade the Barton doctrine by invoking the ultra vires exception, but that exception is exceptionally narrow and inapplicable here. Courts have repeatedly held that it applies only in the rare circumstance where a receiver or trustee wrongfully seizes or retains

property that he had no authority to possess. In re Foster, 2023 WL 20872, at *5 (5th Cir. Jan. 3, 2023) (noting that other circuits apply the exception narrowly, only to "the actual wrongful seizure of property by a trustee"); In re McKenzie, 716 F.3d 404, 415 (6th Cir. 2013). Consistent with this narrow construction, courts uniformly reject attempts to characterize alleged mismanagement, excessive fees, improper motives, or noncompliance with court-imposed procedures as ultra vires conduct. Claims based on acts related to a receiver's official duties are barred by Barton "even if the debtor alleges such acts were taken with improper motives." Satterfield v. Malloy, 700 F.3d 1231, 1236 (10th Cir. 2012).

The ultra vires exception is aimed at a very specific scenario: a third party complaining that a receiver acquired property that was not subject to the receivership at all. Teton Millwork Sales v. Schlossberg, 311 F. App'x 145, 148 (10th Cir. 2009); Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1967). Indeed, courts have identified only two cases in which conduct rose to the level of ultra vires under Barton—Vrooman and Teton Millwork—both involving receivers who seized property belonging to non-parties, outside the scope of the receivership. In re Cruz, 562 B.R. 812, 817 (Bankr. M.D. Fla. 2016). That is not what Plaintiffs allege here.

Instead, Plaintiffs contend that the Receiver acted ultra vires by borrowing funds from an improper lender instead of following the receivership order, which limited loans to those necessary to legalize the property and required him to submit a plan of action. (First Amended Complaint (FAC), page 46, lines 18-24.) They contend that Adams used these alleged unauthorized actions to foreclose on the property, obtain title, evict Michael and Carly Castagnola from their longtime home, and failed to provide relocation services as required. Id. Plaintiffs argue that these alleged ultra vires acts create an exception to the Barton doctrine, allowing them to sue without prior court permission. (FAC, page 205, line 7.) Even if accepted as true, these allegations do not approach the ultra vires threshold. Merely labeling authorized actions as ultra vires does not make them so. Plaintiffs fail to cite any legal authority supporting the claim that these acts fall outside the Receiver Defendants' legal authority.

Despite these myriad allegations, Plaintiff's opposition concedes that the Receiver's actions were approved by the Court, "Plaintiffs note in the FAC that unfortunately the Sonoma

1   County Superior Court appears complicit in Mark Adams wrongdoing." (Plaintiffs' Opposition,

2   page 10, lines 9-10). Put another way, every action taken by the Receiver was expressly

3   reviewed, approved, and ratified by the appointing court at every stage of the receivership

4   proceedings.

5        As courts have explained, a receiver does not act ultra vires merely because he allegedly

6   failed to follow an ideal sequence of steps, deviated from a preferred remediation strategy, or

7   exercised poor judgment in carrying out his duties. The relevant question is whether the

8   challenged conduct was "far enough removed from [the receiver's] authority" to fall outside the

9   scope of the appointment. In re Preferred Ready-Mix, LLC, 660 B.R. 214, 221–22 (Bankr. W.D.

10  Tex. 2024). Here, Plaintiffs do not allege that the Receiver seized property belonging to non-

11  parties, acted in defiance of a court order, or acquired assets outside the receivership estate. (See

12  Plaintiffs' Opposition.) To the contrary, all challenged actions—including obtaining financing to

13  address property issues, demolishing unpermitted structures, and implementing remediation

14  plans—were expressly approved and ratified by the appointing court, and were directly related to

15  the Receiver's court-appointed duties. (Declaration of Mark Adams, ¶ 4; Request for Judicial

16  Notice ("RJN") Exhibits 1 and 2.) Even if Plaintiffs believe these actions were unnecessary or

17  ill-advised, such disagreements reflect the ordinary exercise of discretion, not ultra vires conduct.

18  As a result, Plaintiffs' claims fall squarely within the protections of the Barton doctrine, and the

19  ultra vires exception does not apply.

20       Nor does an alleged failure to submit a plan of action convert otherwise authorized

21  conduct into ultra vires conduct. At most, such an allegation asserts noncompliance with a

22  procedural requirement of the appointing court—precisely the type of grievance that must be

23  raised with that court, not through collateral federal litigation. Extending the ultra vires exception

24  to encompass deviations from court-ordered process would improperly "stretch the *ultra vires*

25  exception to a place where it has not gone before." In re Preferred Ready-Mix, LLC, 660 B.R.

26  214, 221–22 (Bankr. W.D. Tex. 2024). Significantly, Plaintiffs' allegation is factually incorrect:

27  the Receiver Defendants did submit an abatement plan, which was reviewed and approved by the

28

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PROC. 12(b)(1) and 12(b)(6)**

1    appointing court. (Declaration of Mark Adams, ¶ 3; RJN Exhibits 1 and 2.) Their ultra vires

2    theory rests on a demonstrably false premise and cannot support avoiding the <u>Barton</u> doctrine.

3         As in <u>Benta v. Christie's, Inc.</u>, allegations that a receiver's conduct was intentional,

4    unlawful, or even criminal do not render the conduct ultra vires where it remains attributable to

5    the functions the receiver was appointed to perform. 2021 WL 2546453, at *8 (D.V.I. June 21,

6    2021). "Regardless of the motives ascribed to, or claimed illegality of, the conduct of the court-

7    appointed officials, as long as their conduct is attributable to the functions they were appointed to

8    perform, the <u>Barton</u> doctrine applies." Id.

9    Because Plaintiffs challenge conduct undertaken pursuant to and within the scope of the

10   Receiver's court-appointed duties, the ultra vires exception does not apply. Plaintiffs were

11   therefore required to obtain leave of the Sonoma County Superior Court before filing suit in this

12   Court. Their failure to do so deprives this Court of subject-matter jurisdiction and requires

13   dismissal of the FAC.

14      **B.  <u>The State Court Specifically and Unambiguously Denied Carly's Request to File a</u>**

15          **<u>Separate Action Against the Receiver</u>**

16         Plaintiffs' reliance on a purported grant of leave is misplaced. The March 2025 order

17   authorized Carly Castagnola—and Carly alone—to pursue claims in Sonoma County Superior

18   Court within the receivership proceeding. (Declaration of Mark Adams, ¶¶ 5-6; RJN Exhibit 3.)

19   It did not authorize a federal action, did not extend to Michael Castagnola or the Trust, and did

20   not permit suit against the Receiver's affiliated entities. (<u>Id</u>.) Leave under the <u>Barton</u> doctrine

21   must be explicit and is strictly construed. (1881) 104 U.S. 126, 128–29.

22         Plaintiffs now ask this Court to defer ruling on the Motion to Dismiss "until such time as

23   the Sonoma County Superior Court has ruled" on their purportedly pending motion seeking

24   permission to proceed against Mark Adams in federal court, to modify Carly Castagnola's

25   existing order to allow her to proceed in federal court, or to grant other relief. (Plaintiffs'

26   Opposition, page 2, lines 4-10.) That request fails at the threshold. Plaintiffs have not even

27   successfully filed such a motion—the Sonoma County Superior Court docket reflects that the

28

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PROC. 12(b)(1) and 12(b)(6)**

1    submission was returned as unfiled, and no request for leave to initiate and prosecute this action

2    is presently before that court. (Declaration of Mark Adams, ¶ 7; RJN Exhibit 4.)

3           More importantly, this issue is not new. The question of whether Carly Castagnola could

4    pursue a separate action was squarely before the Superior Court almost one year ago, and the

5    court denied that request, limiting her to claims within the receivership proceeding. (Declaration

6    of Mark Adams, ¶¶ 5-6; RJN Exhibit 3.) Plaintiffs' attempt to relitigate that same issue—now in

7    the hope of retroactively securing federal jurisdiction—does not justify delaying this Court's

8    ruling. Deferring a decision would serve only to waste judicial resources where it is already

9    evident that the appointing court has not granted, and previously declined to grant, the

10   permission required under Barton.

11   **C.   <u>California Has Not Abrogated the Barton Doctrine</u>**

12          Plaintiffs' contention that California has abrogated <u>Barton</u> misunderstands both federal

13   supremacy and the doctrine itself. <u>Barton</u> is a federal jurisdictional rule that governs suits against

14   court-appointed fiduciaries in federal court. <u>Barton v. Barbour</u>, 104 U.S. 126, 128–29 (1881).

15   State statutes or policy preferences cannot override federal limits on subject-matter jurisdiction.

16   Indeed, California case law reinforces the principle that a receiver or trustee may not be sued

17   without leave of the appointing court. In <u>McCarthy v. Poulsen</u>, it was emphasized that a receiver

18   is liable in their official capacity only, and that leave of court is required to bring an action

19   against them. 173 Cal. App. 3d 1212 (Ct. App. 1985). Similarly, in <u>Ostrowski v. Miller</u>, the court

20   highlighted that a receiver, as an officer of the court, cannot be made a party to litigation without

21   the appointing court's consent. 226 Cal. App. 2d 79 (Ct. App. 1964).

22          Courts within the Ninth Circuit routinely apply Barton to receivers appointed by state

23   courts sitting in California. See <u>In re Yellowstone Mountain Club, LLC</u>, 841 F.3d 1090, 1095

24   (9th Cir. 2016). Plaintiffs identify no California statute or decision purporting to eliminate the

25   requirement of obtaining leave before suing a receiver in federal court—and none exists.

26   **D.   <u>Plaintiffs' Reliance on § 17980.7(c)(14) to Override Judicial Immunity Is Misplaced</u>**

27          The crux of Plaintiffs' arguments to overcome the Receiver Defendants absolute

28   derivative judicial immunity is to argue that <u>Cal Health & Saf Code</u> § 17980.7(c)(14) waives the

-6-

1    judicial immunity for a takings claim. That could not be further from the truth. The Plaintiffs'

2    reliance on Section 17980.7(c)(14) to argue for an express exception to liability immunity for

3    takings under the Fifth Amendment is misplaced. Section 17980.7(c)(14) explicitly addresses

4    procedural due process rights, ensuring that property owners are not deprived of notice and an

5    adequate opportunity to comply with enforcement orders. It does not create or imply an

6    exception to liability immunity for takings under the Fifth Amendment. Instead, it guarantees

7    procedural safeguards, which are distinct from the substantive protections of the takings clause.

8    Cal Health & Saf Code § 17980.7(c)(14)

9         The takings clause of the Fifth Amendment, as applied to the states through the

10   Fourteenth Amendment, ensures just compensation when private property is taken for public use.

11   However, this protection is separate from procedural due process rights, which focus on the

12   fairness of the process by which the government acts. The California Constitution and federal

13   Constitution both distinguish between these protections, as procedural due process ensures fair

14   notice and hearing, while the takings clause addresses compensation for property appropriated

15   for public use. Shaw v. County of Santa Cruz, 170 Cal. App. 4th 229 (Ct. App. 2008), Herzberg

16   v. County of Plumas, 133 Cal. App. 4th 1 (Ct. App. 2005).  Furthermore, Cal Gov Code § 815.

17   establishes that public entities are generally immune from liability unless expressly provided

18   otherwise by statute. Section 17980.7(c)(14) does not explicitly waive this immunity for takings

19   claims but rather ensures procedural due process rights in the context of enforcement actions

20   against substandard buildings. Therefore, the statute does not support the plaintiff's assertion of

21   an exception to liability immunity for takings. Cal Gov Code § 815.

22        With that argument failing on its face, Plaintiffs next contend that immunity is abrogated

23   where a defendant engages in conduct beyond their legal authority—i.e., ultra vires acts.

24   (Plaintiffs' Opposition, page 2, lines 12-18.) Receiver Defendants briefed this issue at length in

25   Section A of this Reply Brief. In short, Plaintiffs have not successfully cited to any legal

26   authority supporting the notion that the Receiver Defendants' actions constitute ultra vires

27   conduct.

28   ///

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PROC. 12(b)(1) and 12(b)(6)**

1    III.    **CONCLUSION**

2         For the foregoing reasons, Receiver Defendants respectfully request that the Court grant

3    their Motion to Dismiss in its entirety.

4

5    Dated: December 22, 2025                    Respectfully submitted,

6

7

8                                                Mark Adams, Attorney for Defendants MARK
                                                 ADAMS in his capacity as Receiver;
9                                                CALIFORNIA RECEIVERSHIP GROUP INC, a
                                                 California Corporation; and RECEIVERSHIP
10                                               FINANCING, LLC, a California limited liability
                                                 company
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PROC. 12(b)(1) and 12(b)(6)**