Herman Franck, Esq. SBN 123476
Elizabeth Betowski, Esq., SBN 245772
Franck & Associates
1750 Prairie City Road, Ste. 130, #254
Folsom, CA 95630
Tel: 916-256-6266
Email: franckhermanlaw88@yahoo.com
Attorneys for Plaintiffs Michael Castagnola;
Michael Castagnola as Trustee of The Michael L. Castagnola
Revocable Trust Agreement dated September 15, 2016;
and Carly Castagnola

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## [San Francisco Division]

| | |
|---|---|
| MICHAEL CASTAGNOLA; MICHAEL CASTAGNOLA AS TRUSTEE OF THE MICHAEL L. CASTAGNOLA REVOCABLE TRUST AGREEMENT DATED SEPTEMBER 15, 2016; CARLY CASTAGNOLA,<br><br>PLAINTIFFS,<br><br>V.<br><br>MARK ADAMS IN HIS CAPACITY AS RECEIVER; ET. AL.<br><br>DEFENDANTS. | CASE NO: 25-CV-03624-JD<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS ROBERT PITTMAN, DIANA GOMEZ, MICHAEL KING, TYRA HARRINGTON, SUSAN GORIN, DAVID RABBIT, CHRIS COURSEY, JAMES GORE, LYNDA HOPKINS, JESSE CALBK, COUNTY OF SONOMA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: February 12, 2026<br>Time: 10:00am<br>Courtroom: 11, 19th Floor |

Plaintiffs Michael Castagnola individually and as Trustee of the Michael L. Castagnola

Revocable Trust Agreement dated September 15, 2016, and Carly Castagnola herewith submit

this Memorandum of Points and Authorities in opposition to the motions to dismiss filed by

Robert Pittman, Diana Gomez, Michael King, Tyra Harrington, Susan Gorin, David Rabbit,

# TABLE OF CONTENTS

I. SUMMARY OF FACTS AND CLAIMS……………………………………………………1

II. ARGUMENT……………………………………………………………………………..2

    A.  The Federal Claims against the County and County officials are not barred by the Statute of Limitations………………………………………………………………………...2

    B.  Plaintiffs have Standing to Bring the Suit…………………………………………………3

    C.  The FAC Alleges Facts and Case law Negating the County Defendants' Claim of Qualified Immunity……………………………………………………………………..3

    D.  The FAC Adequately Specifies the Individual Conduct of the Members of the County Board of Supervisors and the County Counsel Office, for which no Absolute or Qualified Immunity Applies…………………………………………………………………………4

    E.  The FAC alleges Facts Negating the County Defendants' Claim that the Action is Barred by Either the *Rooker-Feldman* doctrine and/or related Claim Preclusion /*Res Judicata*…6

    F.  Plaintiffs are Entitled to Exemplary Damages……………………………………………6

    G.  The FAC Alleges Facts Constituting the County and Individual Defendants' Liability under the Federal Civil Rights Act……………………………………………………7

    H.  The FAC Alleges a *Monell* claim against the County of Sonoma………………………9

    I.  The FAC Alleges Facts Constituting a Claim for Relief under the Federal RICO Statute………………………………………………………………………………9

    1.  The County of Sonoma is described in the FAC as the enterprise for purposes of the RICO claim…………………………………………………………………………10

    2.  California's Litigation Privilege, Civil Code Section 47(b) does not apply to federal claims such as the Federal Civil Rights Act claim and/or the federal RICO claim. ……..11

    3.  The following cases show the applicable legal standards for predicate claims in a RICO case based on mail fraud and/or wire fraud…………………………………………...11

    4.  Willful destruction of property constitutes a predicate offense under the RICO Act……12

    5.  Obstruction of justice qualifies as a predicate offense under the RICO Act claim……...13

    6.  The FAC properly alleges other victims to defendants' RICO activities………..……..13

III. CONCLUSION……………………………………………………………………15

**TABLE OF AUTHORITIES**

**Federal Cases**

*Abacarian v. Levin*, 972 F.3d 1019, 1027 (9th Cir. 2020)……………………………………5, 10

*Agnew v. City of Compton* (9th Cir. 1956) 239 F.2d 226, 231, Cert. den. 353 U.S. 959……….8

*Ashker v. California Department of Corrections (Brodeur)*, 112 F.3d 392, 395 (9th Cir. 1997) cert. denied, 118 S.Ct. 168 (1997)……………………………………………………………..8-9

*Chalmers versus City of Los Angeles*, 762 F.2d 753, 758 (9th Cir. 1985)………………….3, 7, 15

*Chevron Corp. v. Donziger*, 833 F.3d 74, 132 (2d Cir. 2016)…………………………………5, 10

*Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962)……………………………………………………7-8

*Espinosa v. United States*, No. 16cv4145 (C.D. Ill 2017)…………………………………….12

*Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)………………………………….8

*Herrington v. County of Sonoma*, 834 F.2d 1488 (9th Cir. 1988)…………………………….3, 7

*Kimes v. Stone,* 84 F.3d 1121 (9th Cir. 1996)…………………………………………………11

*Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 n. 4 (9th Cir.1987)………………………..4

*Lance v. Dennis*, 546 U.S. 459, 460, 126 S. Ct. 1198, 1199 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284, 125 S. Ct. 1517 (2005))…………6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992)………………………………………..3

*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986)…………………………....4

*Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)…………………………….9

*Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 851 (9th Cir. 2004)………………11

*Pereira v. United States*, 347 U.S. 1, 8 (1954)…………………………………………………...12

*Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989)……………………………………12

*Schneider v. California Department of Corrections* 345 F3d 716 (9th Cir. 2003)………………8

*Sedima v. Imrex Company, Inc*, 473 U.S. 479, 496, fn 14 (1985)…………………………..13-14

*Sever v. Alaska Pulp Corporation et al.*, 978 F.2d 1529, 1534 (9th Cir. 1992)…………….5, 10

*Turner v. Cook et al.*, 362 F.3d 1219, 1229 (9th Cir. 2004)……………………………..14

*United States v. Altomare*, 625 F.2d 5, 7 (4th Cir.1980)……………………………………….5

*United States v. Angelilli*, 660 F.2d 23, 30-35 (2d Cir.1981), cert. denied sub nom. Butler v. United States, 455 U.S. 945 (1982)……………………………………………………4, 10

*United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir.1979)……………………………..5

*United States v. Clark*, 646 F.2d 1259, 1264 (8th Cir.1981)……………………………...5

*United States v. Feldman*, 853 F.2d 648, 655 (9th Cir. 1988)…………………………….4, 10

*United States v. Freeman*, 6 F.3d 586, 596-97 (9th Cir. 1993)………………………….4-5, 10

*United States v. MacEwen*, 445 F.3d 237, 244 (3d Cir. 2006)……………………...……..11, 13

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002)………………………….11, 13

*United States v. Thompson*, 685 F.2d 993, 998-1000 (6th Cir.) (en banc), cert. denied, 459 U.S. 1072, 103 S.Ct. 494, 74 L.Ed.2d 635 (1982)……………………………………………...5

*Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985)…...4

**Federal Constitution**

Article III of the United States Constitution [Standing]...…..…………………………………3

US Constitution 5th Amendment Takings Clause…………………………………………..8

US Constitution 14th Amendment Substantive Due Process Clause…………..……………3, 7

**Federal Statutes and Rules**

Fed.R.Civ.Pro., Rule 8……………………………………………………………………..2

18 U.S.C. Section 1341 [re mail fraud]…………………………………………………….12

18 USC section 1961 et seq [RICO]…………………………………………………9

18 USC section 1962(c)…………………………………………………………9

Federal Civil Rights Act, 42 USC section 1983…………………………………7


**California Statutes and Rules**

Civil Code Section 47(b) [litigation privilege]……………………………………11

California Government Code section 910……………………………………………2


**Other Authority**

CACI Jury Instruction No. 3000. Violation of Federal Civil Rights—In General—Essential Factual Elements (42 U.S.C. § 1983)……………………………………………8

Eleventh Circuit Court of Appeals Model Jury instruction No. 7.1 Racketeer Influenced and Corrupt Organization Act (RICO) - 18 U.S.C. § 1962(a) -Acquiring an Interest in an Enterprise by Use of Income……………………………………………………10

United States Ninth Circuit Court of Appeal Model Jury Instruction, Instruction 8. Civil RICO……………………………………………………………………10

United States Ninth Circuit Model Jury Instruction 9.1 - Section 1983 Claim—Introductory Instruction………………………………………………………………8

Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994)…………………………………………………………………12

Chris Coursey, James Gore, Lynda Hopkins, Jesse Calbk, County of Sonoma ["The County Defendants"].

## I.
## SUMMARY OF FACTS AND CLAIMS

The Court's 15 page limit on briefs renders it difficult to lay out all of the facts of the case , especially in the face of the County of Sonoma defendants' series of 13 separate grounds in support of its motions to dismiss. Plaintiffs refer the court to the separate document filed concurrently with this opposition, which highlights some of the exhibits attached to the First Amended Complaint ["FAC"], and the section VI of the complaint, which does provide a summary of the basic charging allegations against the County of Sonoma and its code enforcement, permit, County Board of Supervisors, and County Counsel's office for wrongdoings committed during the period after plaintiff Michael Castagnola entered into a stipulated judgment in this matter.

The judgment itself was entered into on [July 24, 2020] [FAC, Exhibit K thereto]. The Complaint makes it clear that the Plaintiffs do not challenge the judgment, and instead are challenging the conduct of Mark Adams as Receiver that occurred after the judgment. The FAC alleges that the County of Sonoma and its individuals officials fully supported sought and approved/ratified all of Mark Adams's behavior, and as such acted in violation of Plaintiffs' federally protected constitutional rights and in a manner that violates the Federal Civil Rights USC section 1983, and the Federal RICO statutes [18 USC section 1962 et seq]. See further, the concurrently-filed Excerpts of Exhibits to the First Amended Complaint; and further documents in support of Opposition to County of Sonoma Defendants' Motion to Dismiss the First amended Complaint; Request for Judicial Notice, Fed.R. Evid., Rule 201 and Attachments A-N thereto.

Plaintiffs' motion in Sonoma County Superior Court, Action No. SCV-265714 has been set for hearing on March 6, 2026. See Attachment N to the Excerpts if Exhibits Etc. Document.

The FAC does not allege state law violations with regards to wrongdoing by the County and/or its individual officials, as no notice of claim under California Government Code section 910 was alleged.

The length and level of detail of the complaint is appropriate, because such detail actually is required in pleading a Federal Civil Rights Act claim and a federal RICO claim, and thus does not violate Fed.R.Civ.Pro., Rule 8's "short and plain statement" requirement.

## II.
## ARGUMENT

### A. The Federal Claims against the County and County officials are not barred by the Statute of Limitations

The County of Sonoma and its officials correctly identify two statute limitations that apply to this case. There is a two-year statute of limitations for actions under the Federal Civil Rights Act, and there is a four-year statute of limitations for actions under the federal R.I.C.O. Act. In support of that contention, they claim that the actions are barred because they go back to the 2017 Agenda Memo, FAC, Exhibit C thereto.

Plaintiffs submit that the primary operative dates actually occurred during the period 2024 and 2025:

    a. Mark Adams incurring $880,000 of expenses against the property: May 2025;

    b. Mark Adams obtaining an eviction order [of repossession] [October 31, 2023, revised and issued September 9, 2024]

    c. Mark Adams later obtaining full title to the property [September 10, 2024]; and

    d.   Evicting of Michael Castagnola and Carly Castagnola [January 8, 2025]

We have collected up the excerpts from the FAC that show these various events and operative dates as Attachment I to the accompanying Excerpts of Exhibits to the FAC Etc. Those dates all occurred within two years of the filing of the initial complaint on April 28, 2025, and all within the four-year statute of limitation period for the RICO claims. Accordingly, the motion to dismiss based on the passing of the statute of limitations should be denied.

**B. Plaintiffs have Standing to bring the Suit**

Plaintiffs have standing to bring this suit, as they are aggrieved parties within the meaning of Article III of the United States Constitution. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) ["But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.,* at 734-735."]

The FAC alleges that plaintiffs have suffered damages as a result of the Defendants' conduct [i.e., FAC, paragraphs 341-348; 354-359; 377; 385; 393; 410; 419; 436; 447; 454; 496-504; 585-596; 637-642; 648; 661-665; and 678-681.

**C. The FAC Alleges Facts and Case law Negating the County Defendants' Claim of Qualified Immunity**

The FAC Alleges Facts and Case law Negating the County Defendants' Claim of Qualified Immunity. See FAC, paragraphs 316-318. See also *Chalmers versus City of Los Angeles*, 762 F.2d 753, 758 (9th Cir. 1985) [internally inconsistent ordinances were held to constitute a substantive due process violation]. See also *Herrington v. County of Sonoma*, 834 F.2d 1488 (9th Cir. 1988). In that case, the County basically lied about a general plans application to a project development and refused to permit the development required permits and allowances to allow

the property owner to build the development envisioned by the property owner. See also the following cases cited in the *Herrington* case as supporting liability under the Federal Civil Rights Act: *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1453 n. 4 (9th Cir.1987); *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986), and *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985).

### D. The FAC Adequately Specifies the Individual Conduct of the Members of the County Board of Supervisors and the County Counsel Office, for which no Absolute or Qualified Immunity Applies.

The FAC Adequately Specifies the Individual Conduct of the Members of the County Board of Supervisors and the County counsel Office, for which no Absolute or Qualified Immunity Applies. See Concurrently-filed Excerpts of Exhibits to FAC Etc., Attachment J, Excerpts of FAC, pages and paragraphs pertaining to Defendant members of the County of Sonoma Board of Supervisors. See also Attachment I thereto, specification of County Counsel defendants' direct and individual involvement [in the schemes], paragraphs 191, 193, 195, 207, 213, 214, 223, 239, 241, 243, 245, 253, 256, 260, 268, 277, 282, 290, 291, 295, 297, 298, 302, 305, and 307. See *US v. Feldman, 853 F.2d 648, 655-656* (9th Cir. 1988) [Broad application of the term "enterprise" for purposes of RICO claims].

See also *United States v. Angelilli*, 660 F.2d 23, 30-35 (2d Cir.1981), cert. denied sub nom. Butler v. United States, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982) [mayor appointed marshals of the court liable; "In sum, we view the language of § 1961(4), defining enterprise, as unambiguously encompassing governmental units"].

As to county agencies, and their involved individual officials being proper defendants, *United States v. Freeman*, 6 F.3d 586, 596-97 (9th Cir. 1993) ["The Ninth Circuit has never squarely

addressed the issue raised by Netters…However, seven other circuit courts have found that a government entity may constitute an "enterprise" within the meaning of RICO."].

See also *United States v. Thompson*, 685 F.2d 993, 998-1000 (6th Cir.) (en banc), cert. denied, 459 U.S. 1072, 103 S.Ct. 494, 74 L.Ed.2d 635 (1982) [Governor's office employees liable under RICO]; *United States v. Clark*, 646 F.2d 1259, 1264 (8th Cir.1981) [county judge liable under RICO; *United States v. Altomare*, 625 F.2d 5, 7 (4th Cir.1980) [prosecuting attorney liable under RICO; *United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir.1979) [employees by Philadelphia Traffic Court liable under RICO].

See also *Chevron Corp. v. Donziger*, 833 F.3d 74, 132 (2d Cir. 2016) ("The court found that there was a RICO "enterprise" consisting of "the LAP team and its affiliates," which included Donziger" by broadly applying the term "enterprise").

See also *Abacarian v. Levin*, 972 F.3d 1019, 1027 (9th Cir. 2020) ["The express distinction drawn by *City of Newport* further confirms that our rule *categorically* exempting municipalities from civil RICO liability does not extend to personal-capacity suits against municipal officials acting in their official capacities."].

See also *Sever v. Alaska Pulp Corporation et al.*, 978 F.2d 1529, 1534 (9th Cir. 1992) [a corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c)].

The FAC, section II [Parties] specifies that each of the County officials named as defendants are sued in their "individual and personal capacity for conduct [s/]he personally did" [Paragraphs 10, 11, 12, 13 re County Counsel Defendants; 17, 18, 19, 20, 21 re County Board of Supervisors

members; paragraphs 16 re code enforcement supervisor Tyra Harrington, and paragraph 22 re Permit Sonoma employee Jesse Cablk.

### E. The FAC alleges Facts Negating the County Defendants' Claim that the Action is Barred by Either the *Rooker-Feldman* doctrine and/or related Claim Preclusion /*Res Judicata*

The FAC alleges facts negating the County Defendants' claim that the action is barred by either the *Rooker-Feldman* doctrine and/or related claim preclusion /*Res Judicata.* See FAC, paragraphs 175-186.  See especially paragraphs 175-177. The *Rooker-Feldman* Doctrine, "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments" rendered before the district court proceedings commenced" [*Lance v. Dennis*, 546 U.S. 459, 460, 126 S. Ct. 1198, 1199 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517 (2005)).]

The point of departure of the claimed wrongdoings of the County of Sonoma and its various officials from code enforcement [Defendant Tyra Harrington] County Counsel [Defendants Robert Pittman, Diana Gomez, and Michael King], Permit Sonoma [Jessie Cablk, Lynda Hopkins], Board of Supervisors [Susan Gorin, David Rabbit, Chris Coursey, and James Gore] is the stipulation and judgment that was entered into between Michael Castagnola and the County on July 24, 2020, a copy of which is attached as Exhibit K to the FAC.

### F. Plaintiffs are Entitled to Exemplary Damages

On issue of exemplary damages, the exemplary damage allegations can be found at the end of each of the series of claims for relief for violation of the Federal Civil Rights Act, which states that exemplary damages are requested as to all defendants. See FAC, paragraph 345.

Plaintiff agrees that punitive damages are not available as to the County itself, but are available as to all individuals named herein.

As to the RICO claim, the trebling of damages is not in the category of exemplary damages, thus that should be available against the county and all defendants found liable under the RICO Act.

## G. The FAC Alleges Facts Constituting the County and Individual Defendants' Liability under the Federal Civil Rights Act

As pointed out in Argument A re qualified immunity, the following two Ninth Circuit published opinions show that the county and county officials named as defendant have violated Plaintiffs' federally-protected Constitutional rights, and that the conduct of defendants was done under the color of legal authority, thus constituting a claim for damages and injunctive relief under the Federal Civil Rights Act, 42 USC section 1983: See *Chalmers versus City of Los Angeles*, 762 F.2d 753, 758 (9th Cir. 1985) [internally inconsistent ordinances were held to constitute a substantive due process violation]. See also *Herrington v. County of Sonoma*, 834 F.2d 1488 (9th Cir. 1988).

The Federal Civil Rights Act is found at 42 USC section 1983. The elements of a claim for relief under the Federal Civil Rights Act are set forth as follows: See *Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962) for the elements of a claim under 42 USC section 1983:

> "In order to state a claim under 42 U.S.C.A. § 1983, facts must be alleged which show that the defendant: (1) while acting under color of any statute, ordinance, regulation, custom or usage of any State or Territory; (2) subjects, or causes to be subjected, any

person within the jurisdiction of the United States to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws of the United States."

*See also Agnew v. City of Compton* (9th Cir. 1956) 239 F.2d 226, 231, Cert. den. 353 U.S. 959.

See also *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

See also, United States Ninth Circuit Model Jury Instruction 9.1 - Section 1983 Claim—

Introductory Instruction [Attachment A to this brief]; setting forth the required elements for a

Federal Civil Rights Act Claim for Relief.

We have also attached as Attachment B hereto, a copy of the California Jury Instruction, setting

out the required elements for a claim under the Federal Civil Rights Act, CACI Jury Instruction

No. 3000. Violation of Federal Civil Rights—In General—Essential Factual Elements (42 U.S.C.

§ 1983).

Regarding the prohibition against public takings without just compensation as a basis for a

federal civil rights claim, see *Schneider v. California Department of Corrections* 345 F3d 716

(9th Cir. 2003) [claim for relief under the Federal Civil Rights Act allowed based on the

California Department of Correction practice of taking interest off of earned off of inmate trust

accounts].

As to the liability of each of the county officials sued here in as individuals in their individual

and personal capacities, see *Ashker v. California Department of Corrections (Brodeur)*, 112 F.3d

392, 395 (9th Cir. 1997) cert. denied, 118 S.Ct. 168 (1997) regarding the need to allege individual and personal capacities for damages under the Federal Civil Rights Act, and specifying that under federal law, Government officials are to be sued in their individual and personal capacities for actions taken in their official.

### H.  The FAC Alleges a *Monell* claim against the County of Sonoma

*Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978) permits a claim against a government entity under the Federal Civil Rights Act if the complaint alleges a custom, policy, or practice that violates rights protected under the federal constitution.

The *Monell* claims against the County are specified in the FAC in the Second Claim for Relief, pages 117-121, paragraphs 350-368, and see the description of other victims, including Esteban Diaz, Thomas H. Lutge, Keni Meyer, Ron Cupp; a group of elders identified as Michael Castagnola, Linda Ludwig, Keith Alden, Barbara Scalabrini, Karen Koelker, Jaqueline King; and people who provided assistance to code enforcement victims: Carmen Cortez, and Elias Stavrinides.

### I.  The FAC Alleges Facts Constituting a Claim for Relief under the Federal RICO Statute

The federal RICO Act is found at 18 USC section 1961 et seq. To recover under § 1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation.  See *Living Designs, Inc. v. E.I. Dupont de Nemours &*

*Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

See also, Attachment C hereto, United States Ninth Circuit Court of Appeal Model Jury Instruction, Instruction 8. Civil RICO [setting forth the required elements of a RICO claim for relief]. See also Attachment D hereto, Eleventh Circuit Court of Appeals Model Jury instruction No. 7.1 Racketeer Influenced and Corrupt Organization Act (RICO) - 18 U.S.C. § 1962(a) - Acquiring an Interest in an Enterprise by Use of Income.

**1. The County of Sonoma is described in the FAC as the enterprise for purposes of the RICO claim.**

The County of Sonoma is described in the FAC as the enterprise for purposes of the RICO claim. See FAC, paragraph 472-474. See also FAC, paragraphs 528-530 [same].

A county qualifies as an enterprise for purposes of the RICO Act. See *US v. Feldman*, 853 F.2d 648, 655 (9th Cir. 1988); *United States v. Angelilli*, 660 F.2d 23, 30-35 (2d Cir.1981), cert. denied sub nom. Butler v. United States, 455 U.S. 945 (1982); *United States v. Freeman*, 6 F.3d 586, 596-97 (9th Cir. 1993); *Sever v. Alaska Pulp Corporation et al.*, 978 F.2d 1529, 1534 (9th Cir. 1992); *Chevron Corp. v. Donziger*, 833 F.3d 74, 132 (2d Cir. 2016); and *Abacarian v. Levin*, 972 F.3d 1019, 1027 (9th Cir. 2020), and further cases discussed further above in Argument D, showing that a County may be a an enterprise for purposes of a RICO claim for relief, and the individuals working through/within the enterprise may be defendants in such a claim.

**2. California's Litigation Privilege, Civil Code Section 47(b) does not apply to federal claims such as the Federal Civil Rights Act claim and/or the federal RICO claim.**

While it is true that many of the issues presented by this case concern activities that occurred in court, it is also the case that California's litigation privilege, Civil Code Section 47(b), does not apply to somehow nullify the federal claims, including the claims under the Federal Civil Rights Act and the federal RICO claims.

See *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 851 (9th Cir. 2004). See also *Kimes v. Stone,* 84 F.3d 1121 (9th Cir. 1996) [reaffirming California's litigation privilege does not immunize parties from federal section 1983 liability; "Conduct by persons ...which is wrongful under 42 U.S.C. § 1983 ... cannot be immunized by state law."]. See also *USA. v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999).

**3. The following cases show the applicable legal standards for predicate claims in a RICO case based on mail fraud and/or wire fraud.**

See FAC pages 136-140, paragraphs 458-466, [allegations of wire fraud and mail fraud [para. 466, re mailing loan documents to clients] as predicate offenses in the RICO claim]. The cases supporting this are: *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) [criminal action for mail fraud, 18 USC section 1623; filing false affidavits in court held to be predicate mail fraud under RICO]. See also *United States v. MacEwen*, 445 F.3d 237, 244 (3d Cir. 2006):

> "Regardless of the route taken, however, we conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce."

See also 18 U.S.C. Section 1341. "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

**4.  Willful destruction of property constitutes a predicate offense under the RICO Act.**

Case law also shows, based on the RICO statute, that the willful destruction of property constitutes a predicate offense under the RICO Act. See *Espinosa v. United States*, No. 16cv4145 (C.D. Ill 2017), in which the court in analyzing whether an arson on a building would constitute a predicate offense of violence noted at page 17:

> "As previously stated, under § 924(c)(3)(A), a "crime of violence" means an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another". Racketeering act four alleged that Espinoza "did engage in an act of arson, that is, by means of fire and explosive, the defendant did knowingly damage and attempt to damage and destroy real property having a value of $150 or more…"

See also FAC pages 140-142, paragraphs 467-471, [allegations of willful destruction of multiple buildings on Mr. Castagnola's former property; allegations of destruction of Carly Castagnoal's property].

**5. Obstruction of justice qualifies as a predicate offense under the RICO Act claim.**

See FAC, page 139-140, paragraph 464-466 and especially paragraphs 465 showing the facts re obstruction of justice.

The following cases show that obstruction of justice in the form of deceiving or deceptive filings with the court constitutes a predicate offense under the RICO Act. See *United States v. MacEwen*, 445 F.3d 237, 244 (3d Cir. 2006), quoted above. See also *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) [filing false affidavits with the Court is obstruction of justice].

See also FAC paragraphs 463-464, describing the process whereby Mark Adams used the court's e-filing system to commit both wire fraud and obstruction of justice as predicate offenses under the RICO claims. The federal jurisdiction is based on the fact that, generally speaking, the Internet and related communications through the Internet work through the national Internet system and thus involve interstate commerce. See *United States v. MacEwen*, 445 F.3d 237, 244 (3d Cir 2006), quoted above.

**6. The FAC properly alleges other victims to defendants' RICO activities**

RICO claims for relief require more than one event. Case law shows that there actually must be two or more events. See *Sedima v. Imrex Company, Inc*, 473 U.S. 479, 496, fn 14 (1985), requiring two or more events:

"<u>As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern "*requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts.</u> The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." ….."

See also *Turner v. Cook et al.*, 362 F.3d 1219, 1229 (9th Cir. 2004):

"A "pattern" of racketeering activity also requires proof that the racketeering predicates are related and "that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S. Ct. 2893…"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition..."

This is an open-ended case, in which Plaintiffs seek injunctive relief. See FAC, pages 221-220, paragraphs 7-9 [injunctive relief requested].

Plaintiffs have stated claims similar to plaintiff's claims on behalf of the following other victims: Esteban Diaz, Thomas H. Lutge, Keni Meyer, Ron Cupp; a group of elders identified as Michael Castagnola, Linda Ludwig, Keith Alden, Barbara Scalabrini, Karen Koelker, Jaqueline King; and people who provided assistance to code enforcement victims: Carmen Cortez, and Elias Stavrinides. See FAC pages 65-103, paragraphs 213-307. In the stark reality of all of these cases, the County is requiring people to fix code violations, which the people are all willing to do; but

then, the County is forbidding them from obtaining the permits necessary to do the fixes. This stop-and-go behavior by the County is cited in the Federal Civil Rights claim for relief as a violation of *Chalmers versus City of Los Angeles*, 762 F.2d 753, 758 (9th Cir. 1985).

It is also cited in the RICO case as constituting predicate offenses of obstruction of justice, mail fraud, wire fraud, destruction of property, and other crimes. Exhibit N to the FAC includes a declaration filed in the case against Mr. Thomas H. Lutge in which his associate Mark Benda explains how he had attempted to submit fully-compliant building permit applications to legalize his commercial property in Petaluma. See Exhibit N to the FAC, paragraphs 3-5, and Exhibit A thereto [Prior Declaration of Mark Benda]. Similar allegations about stopping permit applications appear for each of these victims and show that the County, through its code enforcement and permitting officials, are truly engaging in predicate offenses constituting a basis for the present RICO claims.

### III.
### CONCLUSION

Based on the foregoing, the County of Sonoma and its individual officials sued herein as Defendants' Motion to Dismiss should denied in its entirety. Alternatively, the Court should deny the motions to dismiss as it deems just and appropriate.

Respectfully Submitted,

//s// Herman Franck, Esq.

Date: January  7 , 2026

_____
Herman Franck, Esq.
Attorneys for Plaintiffs Michael Castagnola;
Michael Castagnola as Trustee of The Michael L. Castagnola
Revocable Trust Agreement dated September 15, 2016;
and Carly Castagnola

MPA in Opposition to Motion To Dismiss by Mark Adams

15

**LIST OF ATTACHMENTS**

Attachment A: United States Ninth Circuit Model Jury Instruction 9.1 - Section 1983 Claim—Introductory Instruction

Attachment B: California jury instruction on Federal Civil Rights claims, CACI Jury Instruction No. 3000. Violation of Federal Civil Rights—In General—Essential Factual Elements (42 U.S.C. § 1983).

Attachment C: United States Ninth Circuit Court of Appeal Model Jury Instruction, Instruction 8. Civil RICO

Attachment D: 11th Circuit jury instruction for Federal RICO claims, No. 7.1 Racketeer Influenced and Corrupt Organization Act (RICO) - 18 U.S.C. § 1962(a) -Acquiring an Interest in an Enterprise by Use of Income

1

2

**PROOF OF SERVICE**

3

I, Elizabeth Betowski, declare as follows: That I am an adult over the age of 18, and reside in
Folsom, California, and am not a party to the present action. On the date signed below, I caused
to be served by electronic mail, the following documents:

4

5

6

1.  **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
    SUPPORT OF OPPOSITION TO DEFENDANTS ROBERT PITTMAN, DIANA
    GOMEZ, MICHAEL KING, TYRA HARRINGTON, SUSAN GORIN, DAVID
    RABBIT, CHRIS COURSEY, JAMES GORE, LYNDA HOPKINS, JESSE
    CALBK, COUNTY OF SONOMA'S MOTION TO DISMISS THE FIRST
    AMENDED COMPLAINT**

7

8

9

2.  **PLAINTIFFS' EXCERPTS OF EXHIBITS TO FIRST AMENDED COMAPLINT;
    AND FURTHER DOCUMENTS IN SUPPORT OF OPPOSITION TO
    DEFENDANTS ROBERT PITTMAN, DIANA GOMEZ, MICHAEL KING, TYRA
    HARRINGTON, SUSAN GORIN, DAVID RABBIT, CHRIS COURSEY, JAMES
    GORE, LYNDA HOPKINS, JESSE CALBK, COUNTY OF SONOMA'S MOTION
    TO DISMISS THE FIRST AMENDED COMPLAINT; REQUEST FOR
    JUDICIAL NOTICE, FED.R. EVID., RULE 201**

10

11

12

13

The above-listed documents were served on all parties by electronic mail to the following
addressees:

14

15

Michael King, Esq.
County of Sonoma
County Counsel's Office
575 Administration Drive, Room 105
Santa Rosa, CA 95403-2815
Tel: 707-565-2421
Fax: 707-565-2624
michael.king@sonoma.county.gov
megan.saldanasweeley@sonoma.county.gov\

16

17

18

19

20

*Attorney for Defendants County of Sonoma, Jessie Cablk
Chris Coursey, Diana Gomez, James Gore, Susan Gorin,
Tyra Harringson, Lynda Hopkins, Michael King,
Robert Pittman, and David Rabbitt*

21

22

23

24

25

MPA in Opposition to Motion To Dismiss by Mark Adams

1

2    Mark Adams, Esq.
     California Receivership Group
3    3435 Ocean Park Blvd., Suite 107
     Santa Monica, CA 90405
4    Tel. (310) 471-8181
     Fax (310) 471-8180
5    madams@calreceivers.com

6    *Attorney for defendants Mark Adams,*
     *California Receivership Group, Inc., and*
7    *Receivership Financing, LLC*

8

9

10   I declare under oath and under penalty of perjury that the foregoing is true and correct and that
     this Declaration was executed in Folsom, California, on January  7  , 2026.

11

12   //s// Elizabeth Betowski
     _____
13   Elizabeth Betowski

14

15

16

17

18

19

20

21

22

23

24

25

# ATTACHMENT A

### 9.1 Section 1983 Claim—Introductory Instruction

The plaintiff brings [his] [her] claim[s] under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

### Comment

Past decisions of the Supreme Court and the Ninth Circuit used the phrases "under color of law" and "under color of state law" interchangeably. *Compare, e.g., Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994), and *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (using phrase "under color of law"), *with Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S. Ct. 1444, 1450 (2023), and *Chaudhry v. Aragon*, 68 F.4th 1161, 1171 (9th Cir. 2023) (using phrase "under color of state law").

Because recent Supreme Court and Ninth Circuit cases more frequently use the phrase "under color of state law," rather than "under color of law," the Committee uses the phrase "under color of state law." *See, e.g., Talevski*, 143 S. Ct. at 1450 (using phrase "color of state law"); *Torres v. Madrid*, 141 S. Ct. 989, 994 (2021) (same); *Chaudhry*, 68 F.4th at 1171 (same); *Roberts v. Springfield Util. Bd.*, 68 F.4th 470, 474 n.2 (9th Cir. 2023) (same).

Generally, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1238 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)); *but see Thai v. County of Los Angeles*, 127 F.4th 1254, 1261 (9th Cir. 2025) (holding that law enforcement officers from the Los Angeles District Attorney's Office were acting under color of federal law, not under color of state law, where the source of authority for the joint federal-state task force was federal in nature and the challenged conduct was subject to immediate control of federal supervisors).

The color of law inquiry and the state action inquiry are the same. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). When a private actor's conduct is challenged as "state action" under § 1983, a court looks to two requirements that the private actor must meet: (1) the state policy requirement; and (2) the state actor requirement. *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1121 (9th Cir. 2022). Under the first requirement, the question is whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. *Id.* at 1121-22. Under the second requirement, courts generally use one of four tests outlined by the Supreme Court to examine whether the party charged with the deprivation could be described in all fairness as a "state actor." *Id.* at 1122. Those tests are the public function test, the joint action test, the state compulsion test, and the governmental nexus test. *Id.*; *see Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).

For a discussion of the public function test, *see Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924-26 (9th Cir. 2011); *Wright*, 48 F.4th at 1124. For a discussion of the

joint action test, *see Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167-71 (9th Cir. 2021). For a discussion of the state compulsion test, *see Johnson v. Knowles*, 113 F.3d 1114, 1119-20 (9th Cir. 1997).

For a discussion of whether a public official's social media activity constitutes action under color of state law, *see Lindke v. Freed*, 601 U.S. 187, 199 (2024) (holding that where a city manager deleted comments from posts on his individual social media page and blocked the commenter, a showing of state action would require a plaintiff to show that the city manager "(1) had actual authority to speak on behalf of the State on a particular matter, and (2) purported to exercise that authority in the relevant posts"); *Garnier v. O'onnor-Ratcliff*, 136 F.4th 1181, 1192-94 (9th Cir. 2025) (applying the *Lindke* test to hold that a school board president's blocking of parents on social media accounts that most closely resembled official accounts constituted state action).

*Revised September 2025*

# ATTACHMENT B

## 3000. Violation of Federal Civil Rights—In General—Essential Factual Elements (42 U.S.C. § 1983)

[*Name of plaintiff*] claims that [*name of defendant*] violated [his/her/*nonbinary pronoun*] civil rights. To establish this claim, [*name of plaintiff*] must prove all of the following:

1. That [*name of defendant*] [**intentionally/[***other applicable state of mind*]] [*insert wrongful act*];

2. That [*name of defendant*] was acting or purporting to act in the performance of [his/her/*nonbinary pronoun*] official duties;

3. That [*name of defendant*]'s conduct violated [*name of plaintiff*]'s right [*insert right, e.g., "of privacy"*];

4. That [*name of plaintiff*] was harmed; and

5. That [*name of defendant*]'s [*insert wrongful act*] was a substantial factor in causing [*name of plaintiff*]'s harm.

*New September 2003*

### Directions for Use

In element 1, the standard is not always based on intentional conduct. Insert the appropriate level of scienter. For example, Eighth Amendment cases involve conduct carried out with "deliberate indifference," and Fourth Amendment claims do not necessarily involve intentional conduct. The "official duties" referred to in element 2 must be duties created pursuant to any state, county, or municipal law, ordinance, or regulation. This aspect of color of law most likely will not be a jury issue, so it has been omitted to shorten the wording of element 2. This instruction is intended for claims not covered by any of the following more specific instructions regarding the elements that the plaintiff must prove.

### Sources and Authority

- Civil Action for Deprivation of Rights. Title 42 United States Code section 1983.

- "42 United States Code section 1983 . . . was enacted 'to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.' " (*Modacure v. B&B Vehicle Processing, Inc.* (2018) 30 Cal.App.5th 690, 693 [241 Cal.Rptr.3d 761].)

- "A § 1983 claim creates a species of tort liability, with damages determined 'according to principles derived from the common law of torts.' " (*Mendez v. Cty. of L.A.* (9th Cir. 2018) 897 F.3d 1067, 1074.)

- "A claim under 42 United States Code section 1983 may be based on a showing

222

that the defendant, acting under color of state law, deprived the plaintiff of a federally protected right." (*Modacure, supra*, 30 Cal.App.5th at p. 694.)

- "As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " (*Graham v. Connor* (1989) 490 U.S. 386, 393–394 [109 S.Ct. 1865, 104 L.Ed.2d 443], internal citation omitted.)

- "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." (*Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 934.)

- "By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." (*Catsouras v. Department of California Highway Patrol* (2010) 181 Cal.App.4th 856, 890 [104 Cal.Rptr.3d 352].)

- "Section 1983 can also be used to enforce federal statutes. For a statutory provision to be privately enforceable, however, it must create an individual right." (*Henry A. v. Willden* (9th Cir. 2012) 678 F.3d 991, 1005, internal citation omitted.)

- "Section 1983 claims may be brought in either state or federal court." (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348 [70 Cal.Rptr.2d 823, 949 P.2d 920].)

- "[S]tates are not 'persons' subject to suit under section 1983." (*Mackey v. Board of Trustees of California State University* (2019) 31 Cal.App.5th 640, 654 [242 Cal.Rptr.3d 757].)

- "The jury was properly instructed on [plaintiff]'s burden of proof and the particular elements of the section 1983 claim. (CACI No. 3000.)" (*King v. State of California* (2015) 242 Cal.App.4th 265, 280 [195 Cal.Rptr.3d 286].)

- " 'State courts look to federal law to determine what conduct will support an action under section 1983. The first inquiry in any section 1983 suit is to identify the precise constitutional violation with which the defendant is charged.' " (*Weaver v. State of California* (1998) 63 Cal.App.4th 188, 203 [73 Cal.Rptr.2d 571], internal citations omitted.)

- " 'Qualified immunity is an affirmative defense against section 1983 claims. Its purpose is to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." The defense provides immunity from suit, not merely from liability. Its purpose is to spare defendants the burden of going forward with trial.' Because it is an immunity from suit, not just a mere defense to liability, it is important to resolve immunity questions at the earliest possible stage in litigation. Immunity should ordinarily be resolved by the court, not a jury." (*Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 342 [54 Cal.Rptr.2d 772], internal citations omitted.)

- "[D]efendants cannot be held liable for a constitutional violation under 42 U.S.C.

§ 1983 unless they were integral participants in the unlawful conduct. We have held that defendants can be liable for 'integral participation' even if the actions of each defendant do not 'rise to the level of a constitutional violation.' " (*Keates v. Koile* (9th Cir. 2018) 883 F.3d 1228, 1241, internal citation omitted.)

- "Constitutional torts employ the same measure of damages as common law torts and are not augmented 'based on the abstract "value" or "importance" of constitutional rights . . . .' Plaintiffs have the burden of proving compensatory damages in section 1983 cases, and the amount of damages depends 'largely upon the credibility of the plaintiffs' testimony concerning their injuries.' " (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 321 [103 Cal.Rptr.2d 339], internal citations omitted.)

- "[E]ntitlement to compensatory damages in a civil rights action is not a matter of discretion: 'Compensatory damages . . . are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss.' " (*Hazle v. Crofoot* (9th Cir. 2013) 727 F.3d 983, 992.)

- "[T]he state defendants' explanation of the jury's zero-damages award as allocating all of [plaintiff]'s injury to absent persons reflects the erroneous view that not only could zero damages be awarded to [plaintiff], but that [plaintiff]'s damages were capable of apportionment. [Plaintiff] independently challenges the jury instruction and verdict form that allowed the jury to decide this question, contending that the district judge should have concluded, as a matter of law, that [plaintiff] was entitled to compensatory damages and that defendants were jointly and severally liable for his injuries. He is correct. The district judge erred in putting the question of apportionment to the jury in the first place, because the question of whether an injury is capable of apportionment is a legal one to be decided by the judge, not the jury." (*Hazle, supra,* 727 F.3d at pp. 994–995.)

- "An individual acts under color of state law when he or she exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " (*Naffe v. Frey* (9th Cir. 2015) 789 F.3d 1030, 1036.)

- "The Supreme Court has interpreted the phrase 'under "color" of law' to mean 'under "pretense" of law.' A police officer's actions are under pretense of law only if they are 'in some way "related to the performance of his official duties." ' By contrast, an officer who is ' "pursuing his own goals and is not in any way subject to control by [his public employer]," ' does not act under color of law, unless he 'purports or pretends' to do so. Officers who engage in confrontations for personal reasons unrelated to law enforcement, and do not 'purport[] or pretend[]' to be officers, do not act under color of law." (*Huffman v. County of Los Angeles* (9th Cir. 1998) 147 F.3d 1054, 1058, internal citations omitted.)

- "A state employee who is off duty nevertheless acts under color of state law when (1) the employee 'purport[s] to or pretend[s] to act under color of law,' (2)

his 'pretense of acting in the performance of his duties . . . had the purpose and effect of influencing the behavior of others,' and (3) the harm inflicted on plaintiff 'related in some meaningful way either to the officer's governmental status or to the performance of his duties.' " (*Naffe, supra,* 789 F.3d at p. 1037, internal citations omitted.)

- " 'While generally not applicable to private parties, a § 1983 action can lie against a private party when "he is a willful participant in joint action with the State or its agents." ' " (*Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 396 [218 Cal.Rptr.3d 38].)

- "Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." (*Manhattan Cmty. Access Corp. v. Halleck* (2019) — U.S. — [139 S.Ct. 1921, 1928, 204 L.Ed.2d 405], internal citations omitted.)

- "[P]rivate parties ordinarily are not subject to suit under [section 1983], unless, sifting the circumstances of the particular case, the state has so significantly involved itself in the private conduct that the private parties may fairly be termed state actors. Among the factors considered are whether the state subsidized or heavily regulated the conduct, or compelled or encouraged the particular conduct, whether the private actor was performing a function which normally is performed exclusively by the state, and whether there was a symbiotic relationship rendering the conduct joint state action." (*Robbins v. Hamburger Home for Girls* (1995) 32 Cal.App.4th 671, 683 [38 Cal.Rptr.2d 534], internal citations omitted.)

- "Under the Court's cases, a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.' It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function." (*Manhattan Cmty. Access Corp., supra,* — U.S. — [139 S.Ct. at p. 1928], original italics.)

- "The Ninth Circuit has articulated four tests for determining whether a private person acted under color of law: (1) the public function test, (2) the joint action test, (3) the government nexus test, and (4) the government coercion or compulsion test. 'Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists.' ' "[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." ' " (*Julian, supra,* 11 Cal.App.5th at p. 396.)

- "Because § 1983 'was designed to secure private rights against government

225

**CACI No. 3000**                    CIVIL RIGHTS

encroachment,' tribal members can use it to vindicate their 'individual rights,' but not the tribe's "communal rights.' " (*Chemehuevi Indian Tribe v. McMahon* (9th Cir. 2019) 934 F.3d 1076, 1082, internal citations omitted.)

### Secondary Sources

8 Witkin, Summary of California Law (11th ed. 2017) Constitutional Law, §§ 888, 892 et seq.

2 Civil Rights Actions, Ch. 7, *Deprivation of Rights Under Color of State Law—General Principles (Civil Rights Act of 1871, 42 U.S.C. § 1983)*, ¶¶ 7.05–7.07, Ch. 17, *Deprivation of Rights Under Color of State Law—General Principles (Civil Rights Act of 1871, 42 U.S.C. § 1983)*, ¶ 17.02 (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 113, *Civil Rights: The Post-Civil War Civil Rights Statutes,* § 113.14 (Matthew Bender)

1 Matthew Bender Practice Guide: Federal Pretrial Civil Procedure in California, Ch. 8, *Answers and Responsive Motions Under Rule 12,* 8.40

# ATTACHMENT C

## 8. CIVIL RICO

### Comment

A plaintiff may bring a private civil action for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 18 U.S.C. § 1964(c). The RICO statute prohibits four types of activities: (1) investing in, (2) acquiring, or (3) conducting or participating in an enterprise with income derived from a pattern of racketeering activity or collection of an unlawful debt, or (4) conspiring to commit any of the first three types of activity. 18 U.S.C. § 1962(a)–(d). RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005). However, the statute is to "be liberally construed to effectuate its remedial purposes." *Odom v. Microsoft Corp.*, 486 F.3d 541, 546 (9th Cir. 2007).

As to the element of causation, a plaintiff must prove that the defendant's unlawful conduct was the proximate cause of the plaintiff's injury. *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019).

RICO claims are most commonly brought under 18 U.S.C. § 1962(c) and (d), the conduct and conspiracy prongs of the statute.

### 18 U.S.C. § 1962(c)

To recover under § 1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)).

**Conduct:** The conduct element of § 1962(c) requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required. However, the defendant is not liable under § 1962(c) unless the defendant has participated in the operation or management of the enterprise itself. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (holding that accountants hired to perform audit of a cooperative's records did not participate in "operation or management" of the cooperative's affairs by failing to inform the cooperative's board of directors that the cooperative was arguably insolvent). In determining whether the conduct element has been satisfied, relevant questions include whether the defendant "occup[ies] a position in the 'chain of command,'" "knowingly implement[s] [the enterprise's] decisions," or is "indispensable to achievement of the enterprise's goal." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (holding that attorney's performance of services for alleged associated-in-fact enterprise was not sufficient to satisfy § 1962(c)'s conduct element).

**Enterprise:** An "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal

entity." 18 U.S.C. § 1961(4). The "definition is not very demanding." *Odom*, 486 F.3d at 548. RICO does not require that either the racketeering enterprise or the predicate acts of racketeering be motivated by an economic purpose. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 262 (1994).

For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant. *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (holding that plaintiff could not assert RICO claim against defendant bank because bank was also alleged to be RICO enterprise). However, "the inability of a corporation to operate except through its officers is not an impediment to section 1962(c) suits." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) (holding that individual officers of corporation could be named as defendants even though corporation was alleged to be enterprise and could not act without its officers); *see United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986) (stating that corporate form is the "sort of legal shield for illegal activity that Congress intended RICO to pierce").

An organizational defendant can be a member of a larger associated-in-fact enterprise. *See Living Designs*, 431 F.3d at 361 (stating that an associated-in-fact enterprise could be formed between the defendant corporation, law firms employed by it, and expert witnesses retained by the law firm). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). Its existence is proven through evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. No particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise. *Odom*, 486 F.3d at 551 (concluding that plaintiffs had sufficiently alleged associated-in-fact enterprise between defendant software manufacturer and co-defendant retailer when defendants established cross-marketing scheme for transferring plaintiffs' personal information from the retailer to the manufacturer to allow the manufacturer to improperly charge plaintiffs for services); *see also Boyle*, 556 U.S. at 946 ("It is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").

Defendants in RICO actions must have had "some knowledge of the nature of the enterprise . . . to avoid an unjust association of the defendant[s] with the crimes of others," but the requirement of a common purpose may be met so long as the defendants were "each aware of the essential nature and scope of [the] enterprise and intended to participate in it." *United States v. Christensen*, 801 F.3d 970, 985 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 828 F.3d 763 (9th Cir. 2015). A RICO enterprise is not defeated even when some of the enterprise's participants lack detailed knowledge of all the other participants or their activities. Instead, "it is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." *Id.* (quoting *United States v. Eufrasio*, 935 F.2d 553, 557 n. 29 (3rd Cir. 1991). In particular cases, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise" may overlap. *Boyle*, 556 U.S. at 947. However, "enterprise" and "conduct" are two separate and necessary elements



of a civil RICO claim. *Odom*, 486 F.3d at 549 ("The 'enterprise' is the actor, and the 'pattern of racketeering activity' is an activity in which that actor engages.").

**Pattern:** A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Proving two predicate acts is a necessary condition for finding a violation but may not be sufficient. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous." *Id.*; *Sever*, 978 F.2d at 1529. Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 240. Relatedness of the alleged or proven predicate acts is rarely an issue. *See Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987) (concluding alleged predicate acts were related when all were directed toward inducing the plaintiff to enter the joint venture and provide funds to obtain certain rights). However, merely alleging that the predicate acts share the same participants is insufficient to establish that they are related. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (stating that when the purpose, result, victim, and method of one set of predicate acts were "strikingly different" from those of the other set of alleged predicate acts, even when both sets of predicate acts implicated the same participants, the evidence was not enough to establish relatedness).

The continuity requirement reflects Congress's concern in RICO with long-term criminal conduct. *See H.J., Inc.*, 492 U.S. at 242. Plaintiffs must prove either "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a series of related predicate acts committed over a substantial period of time (known as closed-ended continuity) or show past conduct that by its nature projects into the future with a threat of repetition (known as open-ended continuity). *See id.* at 241-42; *Howard*, 208 F.3d at 750. There is no bright line rule for what period of time will establish closed-ended continuity, but activity spanning only several months is unlikely to satisfy the requirement. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (noting that it would be "misguided" to state as a "hard and fast rule" that to establish closed-ended continuity, the pattern of activity must extend more than a year, but also stating that activity spanning only several months without threatening any future criminal conduct does not meet continuity requirement); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) ("[T]he alleged activity continued for six months at most . . . . We have found no case in which a court has held the [closed-ended continuity] requirement to be satisfied by a pattern of activity lasting less than a year."). Open-ended continuity is shown through "predicate acts that specifically threaten repetition or that become a regular way of doing business." *Allwaste*, 65 F.3d at 1528; *see, e.g., Ikuno v. Yip*, 912 F.2d 306, 308 (9th Cir. 1990) (concluding that open-ended continuity was established based on two filings of false annual trading reports for a phantom commodity trading company and no evidence that the defendant would have stopped filing false annual reports if the company had continued to do business); *Medallion*, 833 F.2d at 1364 (concluding that the continuity requirement was not satisfied because the fraud at issue posed no threat of future activity).

**Racketeering Activity:** To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L.*

*v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985) (noting that "racketeering activity' consists of no more and no less than commission of a predicate act"). Predicate acts must be proved by a preponderance of the evidence. *See Wilcox v. First Interstate Bank*, 815 F.2d 522, 531-32 (9th Cir. 1987).

**Business or Property:** Section 1964(c) "explicitly permit[s] recovery for harms to business and property, [and] it implicitly excludes recovery for harm to one's person." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 939 (2025). "A plaintiff has been 'injured in his business or property' if his business or property has been harmed or damaged. Section 1964(c) requires nothing more." *Id.* (quoting 18 U.S.C. § 1964(c)); *accord Diaz v. Gates*, 420 F.3d 897, 901 (9th Cir. 2005) (en banc) (per curiam). "[T]he 'business or property' requirement operates with respect to the *kinds* of harm for which the plaintiff can recover, not the *cause* of the harm for which he seeks relief." *Med. Marijuana*, 145 S. Ct. at 939. "For example, if the owner of a gas station is beaten in a robbery, he cannot recover for his pain and suffering. But if his injuries force him to shut his doors, he can recover for the loss of his business." *Id.* "In short, a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury." *Id.*

### 18 U.S.C. § 1962(d)

A RICO conspiracy under § 1962(d) may be established by proof of an agreement to commit a substantive violation of RICO. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy.") (citation omitted). The conspirator need not have agreed to commit or facilitate each and every part of the substantive offense. *Howard*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). However, the conspirator must have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Id.* (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)). The "agreement need not be express as long as its existence can be inferred from words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co.*, 298 F.3d at 775. If a RICO conspiracy is demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators." *Id.* (citation omitted).

A defendant can be held liable for a RICO conspiracy if the evidence shows that he or she "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1229-30 (9th Cir. 2004) (citation omitted). There is no requirement that the defendant have actually conspired to operate or manage the enterprise himself or herself. *Id.* (affirming conviction under § 1962(d) of defendant who collected money on behalf of member of enterprise, facilitated communications between conspirators and accepted payment for drugs sold through enterprise).

Section 1962(d) applies to intracorporate, as well as intercorporate conspiracies; thus, it is possible for a corporation to engage in a RICO conspiracy with its own officers and representatives. *Webster v. Omnitron Int'l*, 79 F.3d 776, 787 (9th Cir. 1996) (quoting with approval *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir. 1998), for the proposition that

intracorporate conspiracies … threaten RICO's goals of preventing the infiltration of legitimate businesses by racketeers and separating racketeers from their profits").

For model jury instructions that may be helpful, *see* Eleventh Circuit Pattern Jury Instructions—Civil Cases (2024), Instructions 7.1 *et seq.* These instructions may be accessed at:

https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstructionsRevised APR2024.pdf  or https://perma.cc/47JL-KDVS

*Revised June 2025*

# ATTACHMENT D

5.13

## 7.1 Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(a) – Acquiring an Interest in an Enterprise by Use of Income

[Name of plaintiff] asserts a claim against [name of defendant] for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO. [Name of plaintiff] specifically claims that [name of defendant] violated § 1962(a) of RICO.

To succeed on this claim, [name of plaintiff] must prove each of the following four facts by a preponderance of the evidence:

First, you must find that [name of defendant] derived income, either directly or indirectly, from a pattern of racketeering activity.

Second, you must find that [name of defendant] participated as a principal in the pattern of racketeering activity.

Third, you must find that some part of that income, or proceeds of that income, was used to acquire or maintain an interest in, or to operate, an enterprise.

And fourth, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Now I'll provide you with some additional instructions to apply as you consider the facts that [name of plaintiff] must prove.

1

5.13

For the first element, [name of plaintiff] must prove that [name of defendant] received or obtained money, either directly or indirectly from a pattern of racketeering activity.

"Racketeering activity" is an act that violates [the specific statute[s] alleged]. I'll explain the law about [this statute/these statutes] to help you determine whether [name of plaintiff] proved by a preponderance of the evidence that [name of defendant] violated [this statute/these statutes]. An act of "racketeering activity" is also called a "predicate act."

[Name of plaintiff] must prove that [name of defendant] engaged in a pattern of racketeering activity. A "pattern of racketeering activity" means that [name of defendant] committed at least two distinct predicate acts. Distinct does not have to mean different types. But by itself, proof of two or more predicate acts doesn't establish a pattern under RICO.

To prove a pattern of predicate acts, [name of plaintiff] must show that the acts were related to one another. Two or more acts of racketeering activity that aren't related don't establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Predicate acts are also related if they have common distinguishing characteristics and aren't isolated events.

2

5.13

To be related, the predicate acts don't have to be the same kind of acts. For example, the acts may comprise one act of [type of alleged predicate act (e.g., wire fraud)] and one act of [another type of alleged predicate act (e.g., interstate transportation of stolen property)].

A pattern of racketeering activity requires predicate acts showing continuity. This can be demonstrated in two ways. The first is to demonstrate related predicate acts extending over a substantial period of time. The second is to show conduct that doesn't occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

Again, "racketeering activity" means an act that violates [the statute[s] at issue]. But you can't consider just any racketeering act [name of defendant] allegedly committed in violation of one of these statutes as bearing on whether [name of defendant] has committed two or more predicate acts as a pattern of racketeering activity. [To determine if there is a pattern of racketeering activity, you must consider only those specific racketeering acts [name of plaintiff] alleges against [name of defendant.]] And you can't find that [name of defendant] engaged in a "pattern of racketeering activity" unless you unanimously agree on which of the alleged predicate acts, if any, make up the pattern.

So it's insufficient if you don't all agree to the finding of what two or more predicate acts [name of defendant] committed. Some of you can't find that the

5.13

predicate acts are A, B, and C and the rest of you find that the predicate acts are X, Y, and B. Put another way, you can't find that [name of defendant] has engaged in a pattern of racketeering activity unless you find (1) a "pattern" of predicate acts, and (2) that [name of plaintiff] has proved by a preponderance of the evidence that [name of defendant] committed each of the two or more predicate acts that you find make up that pattern.

For the second element, [name of plaintiff] must prove that [name of defendant] "participated as a principal" in the pattern of racketeering activity. To prove this, [name of plaintiff] must show by a preponderance of the evidence that [name of defendant] either: (1) committed – or aided, abetted, counseled, commanded, induced, or procured the commission of – two or more alleged predicate acts that make up the alleged pattern of racketeering activity; or (2) willfully caused the commission of two or more alleged predicate acts that make up the alleged pattern of racketeering activity, which, if [name of defendant] directly performed, would make up the commission of two or more alleged predicate acts that comprise the alleged pattern of racketeering activity. To be a "principal," [name of defendant] must have acted with intent or knowledge, rather than by mistake or accident.

5.13

For the third element, [name of plaintiff] must prove that some part of the income or proceeds of that income derived from the racketeering activity was used to acquire, maintain an interest in, or operate an enterprise.

[Alternative #1: Individual or entity enterprise: An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. In this case the enterprise is alleged to be [identify enterprise].]

[Alternative #2: Association-in-fact enterprise: An "enterprise" doesn't have to be a legal entity. It can be an association of persons or entities. In this case, the enterprise is alleged to be [identify enterprise]. The association between the enterprise's members might be loose or informal. But the enterprise must have at least a purpose, relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's purpose. Also, an enterprise must have a property interest that [name of defendant] can acquire.]

For the fourth element, [name of plaintiff] must prove that the enterprise engaged in or had an effect on interstate or foreign commerce. "Engage in or have an effect on interstate or foreign commerce" means that the enterprise either engaged in, or had an effect on commerce between two or more states, or on commerce between a state and a foreign country.

5.13

If you find that [name of defendant] violated § 1962(a), you must decide whether that violation caused an injury to [name of plaintiff]. The damages that [name of plaintiff] may recover are those caused by the use or investment·of racketeering income to injure [name of plaintiff] or [his/her/its] business or property. Put another way, [name of plaintiff]'s injury must flow from [name of defendant]'s use or investment of racketeering income.

## ANNOTATIONS AND COMMENTS

The Eleventh Circuit held in *United States v. Pepe*, 747 F.2d 632, 675-76 (11th Cir. 1984) that "a plain reading of the statute indicates that RICO does not contain any separate *mens rea* or scienter elements beyond those encompassed in its predicate acts." As a result, in a § 1962(a) case, the only relevant mental state is that necessary to commit the predicate acts. *See, e.g., Edwards v. Prime, Inc.*, 602 F.3d 1276, 1292-97 (11th Cir. 2010) (analyzing different knowledge and intent requirements of specific categories of predicate offenses). This is in contrast to a RICO conspiracy, which requires the additional element of agreement. *United States v. Martino*, 648 F.2d 367, 383 (5th Cir. 1981).

The Eleventh Circuit's treatment of this issue is, however, not completely consistent. For example, in *Pepe*, the court affirmed where a Defendant had been acquitted of RICO conspiracy but found guilty of a § 1962(c) violation, noting that the evidence was sufficient to permit the jury to find that the Defendant engaged in racketeering activity and was an active participant in the enterprise, which was characterized as "knowing participant in the enterprise." 747 F.2d at 665. As between these two, the requirement that the Defendant be an active participant seems to be more appropriate but this is not a completely settled area of law in this circuit. Accordingly, current case activity should be researched before this instruction is used to determine if more recent circuit authority on this issue is available.

This instruction assumes a single plaintiff suing a single defendant. It needs to be modified if there are multiple parties.

In *Beck v. Prupis*, 162 F.3d 1090, 1095 n.8 (11th Cir. 1998), the Eleventh Circuit noted that § 1962(a) of RICO prohibits the investment of income derived from a pattern of racketeering activity in any enterprise involving interstate commerce. See also *Pelletier v. Zweifel*, 921 F.2d 1465, 1489 (11th Cir. Ga. 1991) ("Section 1962(a) makes it a crime for anyone who has derived income from 'a pattern of racketeering activity... in

which such person has participated as a principal… to use or invest, directly or indirectly, any part of such income… in acquisition of any interest in, or the establishment or operation of, any enterprise… engaged in… interstate… commerce.") (quoting 18 U.S.C. § 1962(a)); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1288 (S.D. Ga. 2003) ("Section 1962(a) has two components: (1) receiving income from a pattern of racketeering activity, and (2) investing that income in an enterprise.") (quoting *Georgia v. Dairymen, Inc.*, 813 F. Supp. 1580, 1584 (S.D. Ga. 1991)).

The definition of "predicate act" comes from *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006) (quoting *Maiz v. Virani*, 253 F.3d 641, 671 (11th Cir. 2001)). "A 'pattern' of racketeering activity is shown when a racketeer commits at least two distinct but related predicate acts." *Id.* (quoting *Maiz v. Virani*, 253 F.3d at 671). In *Williams*, the Court affirmed denial of the defendant's Rule 12(b)(6) motion to dismiss the RICO claims, finding that the plaintiff's allegations that the defendant had "committed hundreds, even thousands, of violations of federal immigration laws" were sufficient to plead a "pattern of racketeering activity." *Id.*

The continuity and relationship elements are derived from *United States v. Browne*, 505 F.3d 1229, 1257 (11th Cir. 2007) (noting that to establish a pattern of predicate acts, the plaintiff must prove that the predicate acts relate to each other and have continuity). In defining how "the predicate acts must relate to each other," the Eleventh Circuit has stated this "the predicate acts must 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and… not [be] isolated events.'" *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, n.14 (1985)); *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995) (same). In *Starrett*, the court found that the evidence that the defendant used a communication facility in the perpetration of a felony, transported an individual across state lines for the purpose of prostitution, and intended to distribute cocaine and marijuana supported a finding that the defendant's predicate acts were related. *Id.* at 1547. Specifically, the court found that "[f]our of the [defendant's] predicate acts shared the purpose of facilitating illegal prostitution, and the other four predicate acts share the purpose of furthering narcotics distribution." Id.

*Starrett* also discussed examples of how the two required predicate acts need not be the same type of acts to be related. *Id.* (finding that the evidence that the defendant used a communication facility in the perpetration of a felony, transported an individual across state lines for the purpose of prostitution, and intended to distribute cocaine and marijuana supported a finding that the defendant's predicate acts were related).

As for continuity, "[p]redicate acts demonstrate continuity if they are either 'a closed period of repeated conduct,' or 'past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* at 1543 (quoting *H.J., Inc. v. NW Bell Tel. Co.*, 492 U.S. 229 (1989)). *See also, Browne*, 505 F.3d at 1257. The continuity of predicate acts was found to be satisfactorily alleged where defendants "had agreed to a scheme whereby

5.13

[one] would supply [the other] with cocaine on an on-going basis." *Starrett*, 55 F.3d at 1547.

The second element requires a plaintiff to establish that the defendant "participated as a principal." Courts have interpreted 18 U.S.C. § 2(a) and (b) as permitting plaintiff to satisfy this element by establishing that a defendant either: aided, abetted, counseled, commanded, induced, or procured the commission of two or more alleged predicate offenses that constitute the pattern of racketeering activity ; or willfully caused acts to be done which if directly performed by him would constitute the commission of two or more alleged predicate offenses that constitute the pattern of racketeering activity. *See, e.g., In re Sahlen & Assoc., Sec. Litig.*, 773 F. Supp. 342, 368 (S.D. Fla. 1991) (aiding and abetting); *Grimsley v. First Alabama Bank, No. 88000113*, 1988 U.S. Dist. LEXIS 16042, at *3 (S.D. Ala. 1988). Also premised on 18 U.S.C. § 2 is that a defendant must have intent or knowledge in order to act as a principal. *Id.* ("One cannot aid, abet, counsel, command, induce, willfully cause or perform without knowledge or intent.").

An example of the third element - that "some part of the income or proceeds of that income derived from the racketeering activity was used to acquire, maintain an interest in, or operate and enterprise" - was discussed in *In re Sahlen*. 773 F. Supp at 366 (finding that the plaintiffs had sufficiently alleged a violation of 1962(a) by alleging that the defendants had derived income as officers and directors of a company through fraudulent securities offerings and sales of stock and then invested this income back into the company to continue the scheme and guarantee the company's growth and increased value, to the detriment of the investing public).

18 U.S.C. 1961(4) provides the definition of enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." For discussion regarding the definitions of individual or entity enterprise or association-in-fact enterprise, *see Starrett*, 55 F.3d at 1541 (the South Florida Chapter of the Outlaw Motorcycle Club constituted an enterprise under 18 U.S.C. § 1961(4)); *Williams*, 465 F.3d at 1284 ("[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity.") (quoting *United States v. Goldin Industries, Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000)). In *Williams*, the Court found that the plaintiff's allegations that the defendant corporation worked with third-party temp agencies/recruiters to bring illegal workers into this country for the defendant's benefit were sufficient to allege an "enterprise" under this section.

In *Boyle v. United States*, 556 U.S. 938, 946-47, 129 S. Ct. 2237, 2244 (2009), the Supreme Court held that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with an enterprise,

and longevity sufficient to permit these associates to pursue the enterprise's purpose."). *See also Williams*, 465 F.3d at 1284-85 (allegations that the defendant corporation worked with third-party temp agencies/recruiters to bring illegal workers into this country 'for the defendant's benefit were sufficient to allege common purpose). In *Boyle*, the defendant was charged in connection with a series of bank thefts allegedly conducted by a group that was loosely organized and did not appear to have a leader or hierarchy. The Supreme Court ruled that although the three structural features set forth above were necessary for a finding of an association -in-fact enterprise, there are no additional structural features such as hierarchy or a chain of command required.

Section 1962(a) also requires that an enterprise have a property interest that can be acquired by the defendant. *See Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 259, 114 S. Ct. 798, 804 (1994) ("The 'enterprise' referred to in subsections (a) and (b) [of § 1962] is thus something acquired through the use of illegal activities or by money obtained from illegal activities. The enterprise in these subsections is the victim of unlawful activity and may very well be a 'profit-seeking' entity that represents a property interest and may be acquired. But the statutory language in subsections (a) and (b) does not mandate that the enterprise be a 'profit-seeking' entity; it simply requires that the enterprise be an entity that was acquired through illegal activity or the money generated from illegal activity. By contrast, the 'enterprise' in subsection (c) [of § 1962] connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity... Consequently, since the enterprise in subsection (c) is not being acquired, it need not have a property interest that can be acquired nor an economic motive for engaging in illegal activity; it need only be an association in fact that engages in a pattern of racketeering activity. Nothing in subsections (a) and (b) directs us to a contrary conclusion."); *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1368 (M.D. Fla. 2005) ("Unlike a § 1962(c) enterprise, which 'generally connotes the vehicle through which the unlawful pattern of racketeering activity is committed,= a '1962(a) enterprise is something acquired through the use of illegal activities or by money obtained from illegal activities. A § 1962(a) enterprise is, in other words, the victim of unlawful activity, not the vehicle through which that activity is committed.@ (citations and quotations omitted).

Pursuant to 18 U.S.C. ' 1964(c), A[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue . . . in any appropriate United States district court@ and may recover treble damages and a reasonable attorney=s fee. However, no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of Section 1962. This exclusion concerning securities does not apply to an action against any person that is criminally convicted in connection with a securities fraud. 18 U.S.C. ' 1964(c). AIn contrast to the injury requirement under ' 1962(c), which my be satisfied by harm alleged to be the result of racketeering activity,, a majority of courts that have addressed the issue have determined that a claimant under '1962(a) must plead an injury which stems not

>from the racketeering predicate acts themselves= but from the >use or investment of . . . racketeering income.=@). *Id.* at 1369 (quoting *Fogie v. Thorn Ams., Inc.*, 190 F.3d 889, 895 (8th Cir. 1999) (adopting the majority position that limits >standing only to plaintiffs who have suffered injury from the use or investment or racketeering income@)); *Club Car, Inc.*, 276 F. Supp. 2d at 1288 (AThe plain language of Federal RICO shows that injury by reason of investment of racketeering income B investment injuryB is required.@) (quoting *Dairymen, Inc.*, 813 F. Supp. at 1584)). In *Club Car*, the court dismissed the plaintiff=s ' 1962(a) claim for failure to allege Aany injury resulting from the investment of racketeering income,@ as opposed to injury from the underlying predicate acts.@ 276 F. Supp. 2d at 1288. *See also, Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 291 U.S. App. D.C. 303, 941 F.2d 1220, 1229 (D.C. Cir. 1991) (holding that injury to a plaintiff must flow from a Defendant=s use or investment of racketeering income.)